James **CAREY**

v.

**LOCAL BOARD NO. 2, HARTFORD, CONNECTICUT.**

Civ. No. 12966.

United States District Court
D. Connecticut.

Feb. 13, 1969.

Karl Fleischmann, Satter & Fleischmann, Hartford, Conn., for plaintiff.

Jon O. Newman, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION FINDINGS OF FACT CONCLUSIONS OF LAW

BLUMENFELD, District Judge.

This case presents a question under the Military Selective Service Act of 1967, 50 App.U.S.C. § 451 et seq., which is of importance to the present class of second year graduate students. The plaintiff, James Carey, in his second year of study at Yale Law School, brings this suit in the nature of mandamus, under 28 U.S.C. § 1361,[1] to compel the defendant, his local draft board, to classify him I–S and thereby defer his induction into the Armed Forces until the end of the academic year. The plaintiff's claim is that the Act affords to him, as a graduate student not otherwise deferred and who has not been deferred as an undergraduate student since June 30, 1967, an absolute right to a I–S deferment to complete the academic year notwithstanding he has been called for induction.

Carey graduated from college in June 1965. He then spent two years doing graduate study in England. In September 1967 he entered the Yale Law School. From the beginning of his junior year in undergraduate school until

---

1. Title 28 U.S.C. § 1361 provides:
"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

the end of his first year in law school (June 1968), Carey received II–S deferments from his local board.

In June 1968, the defendant reclassified Carey from II–S to I–A, and on October 14, 1968, after he had commenced his second year in law school, Carey was ordered to report for induction on November 6, 1968. When he received this order, Carey wrote to the draft board requesting a deferment until the end of the academic year. The draft board's response to this letter was to postpone his induction until February 3, 1969. Carey again requested a deferment until the end of the academic year. The defendant refused this request.[2]

### Jurisdiction

The defendant moves to dismiss on the grounds that: (1) this is not a proper suit in the nature of mandamus, and, therefore, there is no jurisdiction under 28 U.S.C. § 1361; and (2) even if this is a proper suit in the nature of mandamus, the jurisdiction of this court to entertain it is barred by § 10(b) (3) of the Selective Service Act of 1967, 50 App.U.S.C. § 460(b) (3).

1. *Mandamus*: On the first ground the defendant makes three contentions. The first is that mandamus is appropriate only where the relief sought is affirmative in nature. The defendant concedes that the specific relief that the plaintiff requests—an order compelling the defendant to classify plaintiff I–S—is affirmative; however, it argues that what the plaintiff seeks in reality is negative relief—an order barring his induction. Assuming that what the plaintiff ultimately desires is a postponement of his induction until the end of the academic year, this will not require a negative injunction, but will flow automatically from the order requested of the court. By its very terms, a classification of the plaintiff into I–S will defer

him until the end of the academic year. There is no need to look beyond the relief requested in the complaint. The form of relief sought in this case does not bar relief by way of mandamus.

Secondly, the defendant contends that mandamus is appropriate only where there is a clear statutory duty on the part of the defendant, free from doubt and devoid of any discretion. Cf. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966). The defendant contends that there is an *apparent* conflict between the statute and the regulations. This would necessarily involve a construction of the statute by the administrative official (or a court). Consequently, any duty imposed by that statute is not clear and, therefore, mandamus is not appropriate. However, the fact that a statute may require administrative or judicial construction in order to determine what duties it creates does not mean that mandamus is not proper to compel the officer to perform that duty, once it is determined. In an opinion which affirmed the award of a writ of mandamus, the Supreme Court rejected the same argument tendered by the defendant here:

"Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. * * * If the law direct him to perform an act in regard to which no discretion is

---

**2.** Plaintiff's administrative remedies have been exhausted. A I–S can be requested only after an induction order has been received, which is after all right to appeal from the I–A classification has run.

*See* 32 C.F.R. § 1626.41. The denial of a I–S is not a "classification decision," but a refusal to reopen the I–A classification, from which no appeal lies. *See* 32 C.F.R. §§ 1625.4, 1625.13.

committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, *although depending upon a statute which requires, in some degree, a construction of its language by the officer.*" Roberts v. United States, 176 U.S. 221, 231, 20 S.Ct. 376, 379, 44 L. Ed. 443 (1900) (emphasis added).[3]

See Udall v. Wisconsin, 113 U.S.App.D. C. 183, 306 F.2d 790, 793 (1962), cert. denied, 371 U.S. 969, 83 S.Ct. 552, 9 L. Ed.2d 539 (1963). The fact that the duty involved becomes clear only after a construction of the statute does not preclude relief under 28 U.S.C. § 1361.

Thirdly, the defendant contends that § 1361 relief is inappropriate because the order sought by the plaintiff would have the effect of requiring the local board to disregard a Presidential regulation which it is required by law to follow. But this argument begs the question. The plaintiff not only challenges the validity of the regulation, but also asserts that if properly interpreted the local board will not be faced with the necessity to disregard it. Since these claims of the plaintiff go to the heart of the merits, determination of this point will be deferred until the merits are resolved.

■ *2. Section 10(b) (3):* The defendant further contends that even if the plaintiff's claim is suitable for relief by mandamus, the court has been deprived of jurisdiction by § 10(b) (3) of the Selective Service Act of 1967, 50 App.U.S.C. § 460(b) (3). Section 10(b) (3) reads in part: "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * *." While this language appears to be a rather clear command

barring preinduction judicial review, the statute must be read in light of its most recent interpretation by the Supreme Court.

In Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Supreme Court held that § 10(b) (3) will *not* bar preinduction judicial review of the classification or processing of a registrant where the registrant can show (1) a clear statutory grant of a deferment; (2) involving no discretion on the part of the local board; and (3) that the board's action in denying the deferment contravened the express statutory command.

Whether these elements are present in this case can be more readily determined after a fuller examination of the merits of the plaintiff's claim.

### The Merits

I begin with a brief outline of the provisions of the law affecting liability of university students for induction into the armed services. Section 6(h) (1) of the Act, 50 App.U.S.C. § 456(h) (1), directs that the President *shall* provide for the granting of deferments to students who are satisfactorily pursuing a full time course of instruction in a college at the undergraduate level. This statutory undergraduate deferment continues until the student receives a baccalaureate degree or reaches age twenty-four, whichever occurs earliest. This subsection has no predecessor in the earlier selective service acts. It was enacted in 1967 and became effective on June 30, 1967. Pursuant to 32 C.F.R. § 1622.25, students in this category are classified as II–S (undergraduate II–S deferment).

Another category of deferments is provided for in § 6(h) (2) of the Act.

---

3. While the Supreme Court in *Roberts* was ruling upon the scope of the common-law writ of mandamus, not a suit "in the nature of mandamus" under 28 U.S.C. § 1361, the relief contemplated under the statute is at least as broad as under the pre-existing law of mandamus. Compare Massachusetts v. Connor, 248

F.Supp. 656 (D.Mass.1966), aff'd, 366 F.2d 778 (1st Cir. 1967), *with* C. Byse and J. Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Non-statutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967).

This section includes an authorization for the President to provide by regulation for the deferment of graduate students whose deferment he considers essential to the national interest. This section was also enacted with the 1967 amendments, but an almost identical provision was present in the 1948 and 1951 Acts. Section 6(h) of those earlier Acts authorized the President to provide for the deferment of both graduate and undergraduate students, there having been no equivalent in those Acts to the mandatory deferment of undergraduates now found in the current § 6(h) (1). Graduate students deferred under the President's rule-making power are also classified as II–S under 32 C.F.R. § 1622.26 (graduate II–S deferments).

There is a third category of student deferment which applies to all university students, whether graduates or undergraduates. Under 32 C.F.R. § 1622.-15(b) this type of deferment is designated as I–S. Its source is § 6(i) (2) of the Act, which has remained unchanged since 1951. Because this case is mainly concerned with the application of its provisions, it is set out in full:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, *shall,* upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948 [former subsection (i) (2) of this section]; or any person who has heretofore been deferred as a student under section 6(h) of such Act [former subsection (h) of this section]; or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section. Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate." (Emphasis added).

Although both concern student deferments, the II–S and the I–S deal with quite different problems. Broadly viewed, the provisions from which the II–S classifications are derived relate to the problem of selecting those educational pursuits in the field of higher learning which will warrant deferment of students until they obtain the degree they are seeking. As a separate matter, the I–S deferment is concerned with preventing interruption of studies during the course of a school year by deferring induction until the end of the academic year. With these two purposes in mind, § 6(i) (2) may be summarized as follows: It provides for an absolute right to a I–S deferment for students called for induction during an academic year with four specific exceptions: (1) those who have had undergraduate II–S deferments since July 1, 1967 (§ 6(h) (1));[4] (2) and (3) those who had a II–S or a I–S deferment between 1948–1951 (§ 6(i) (2));[5] and (4) those who have

---

4. Section 6(h) (1) of the Act contains this proviso:

"No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this sub- section, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree * * *."

5. The student deferment provisions of the 1948 Act, referred to in § 6(i) (2),

had a I–S under the 1951 Act (§ 6(i)(2)).

Whether the plaintiff in this action, who is presently satisfactorily pursuing a full time course of instruction at a university and has now been called for induction, falls within any of the exceptions so as to preclude him from the right to a I–S deferment requires that the deferments he has had since he first became a registrant be measured against the four exceptions.

The defendant, with commendable candor, concedes that when the plaintiff's record is tested against a literal reading of the Act his statutory right to a I–S does not fall within any of the statutory exceptions.[6] However, it calls attention to a regulation and an interpretative memorandum of the Selective Service Director, the effect of which is to create an exception to the plaintiff's right to a I–S deferment. The regulation referred to is 32 C.F.R. § 1622.15(b), which provides:

> "In Class I–S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I–S under the provisions of this paragraph
>
> (1) who has previously been placed in Class I–S thereunder or
>
> (2) who has been deferred as a student in Class II–S and has received his baccalaureate degree." [7]

Subsection (2) has been amplified by the Director's Local Board Memorandum No. 87, which reads:

> "Section 1622.15(b)(2) of the Selective Service Regulations refers to a registrant who has been placed in Class II–S after June 30, 1967, and has a baccalaureate degree."

The exception in 32 C.F.R. § 1622.-15(b)(2) on its face is much broader than the statutory exceptions; it is open to an interpretation that would deny the I–S to any graduate student who had *ever* received a II–S deferment. Apparently Local Board Memorandum No. 87 was intended to restrict this broad reading. Under plaintiff's argument the memorandum did not do a complete job, since plaintiff argues that the regulation must be read consistently with the statute to preclude only those who had received a II–S deferment after June 30, 1967, and *thereafter* received a baccalaureate degree. Under defendant's argument, Local Board Memorandum No. 87 properly interprets the regulation to deny a I–S deferment to any graduate student who received a II–S after June 30, 1967.

To support the validity of the regulation as so interpreted, the defendant argues that a literal application of the Act frustrates the intention of Congress. It points out that the evident purpose of expressly denying I–S deferments to all students who received a baccalaureate degree after June 30, 1967, was to put an end to the pyramiding of deferments. Since Congress had authorized the President to defer certain categories of grad-

---

were superseded in 1951. The reason students deferred from 1948 to 1951 were precluded from the I–S is that until 1951, those receiving student deferments could not be drafted after the age of twenty-six. Precluding this group of students from the I–S deferment prevented them from using that deferment to remain in school until they reached twenty-six. Since 1951, however, those who receive student deferments are liable for induction until age thirty-five; therefore, they cannot escape the draft by use of the I–S.

6. Carey received his undergraduate II–S under § 6(h) of the 1951 Act, and his graduate II–S deferments under § 6(h) of the 1951 Act and § 6(h)(2) of the 1967 Act. He did not receive an undergraduate II–S under § 6(h)(1) of the 1967 Act, nor has he ever received a I–S deferment.

7. The reference to a baccalaureate degree appears to have been taken from § 6(h)(1) of the Act, quoted in footnote 4, *supra.*

uate students, the argument continues, the President had the power to fashion regulations which would put all graduate students, no matter when they received baccalaureate degrees, on an equal footing after June 30, 1967, with respect to the risk of being called for induction during an academic year.

Although the new scheme Congress enacted was not directly related to the situation of those who had already received their baccalaureate degree and were in or about to enter graduate school, it was expected that the President would curtail the categories of graduate study. As to those students in categories likely to be terminated, the President offered interim relief by a regulation, 32 C.F.R. § 1622.26(b), which provided for II–S deferments until the completion of study for a graduate degree to those in their second or later year of graduate school on October 1, 1967. Those in their first year would be classified II–S for one year only. The plaintiff is in this latter group. The defendant argues that this ameliorative regulation ought not be used by the plaintiff to boot-strap himself into a right to receive a I–S by a literal application of the 1967 Act.

Even if the plaintiff was relying upon 32 C.F.R. § 1622.26(b) affording him a graduate II–S deferment for one year, which he is not, the question would not thereby be whether the construction of 32 C.F.R. § 1622.15(b) urged by the plaintiff is a plausible one. Rather, the question is whether a literal interpretation of the Act is "at the expense of the reason of the law and produc[es] absurd consequences or flagrant injustice * * *." Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 214, 77 L.Ed. 413, 86 A.L.R. 249 (1932).

As to the consequences, they are no different than they were before the amendments of 1967. The statutory language authorizing graduate II–S deferments and mandating I–S deferments is exactly the same as it was before. The only relevant part of the statute which Congress altered related to undergraduate deferments. Although Congress expected that graduate II–S deferments would be reduced in proportion to the reduction of categories of graduate study, it did not intend that the rights of students in graduate schools to a I–S deferment be disturbed. This point emerges most obviously from both the House Report, see H.R.Rep. No. 267, 90th Cong., 1st Sess., in 1967 U.S.Code Cong. & Admin. News, pp. 1308, 1330, and the Conference Report, see Conf. Rep. No. 346, 90th Cong., 1st Sess., in id. at pp. 1352, 1359, which specifically noted the "strong conviction" of the House conferees that "those students presently accepted for or actively participating in graduate studies, be permitted to continue these studies with a deferred status until they achieve or fail to achieve the degree which would normally mark the completion of their present level of training." Without an elaborate discussion of the mass of relevant considerations underlying this "conviction" there was the concern of Congress with the expectations, careers, plans, and commitments up to that time of those currently in or about to enter graduate school. Although a I–S would not allow in every case for the completion of study over several years to a graduate degree, it would avoid the waste and hardships of an interrupted academic year.

In view of the number and character of the criticisms of the Selective Service Act current when the legislation was being considered by Congress, no one could say that Congress was not aware of all aspects of the tensions between the nation's need for an adequately manned armed service as well as for an educated citizenry. The amendments under consideration here were designed to effect an accommodation between those tensions. Cf. Louisville Country Club, Inc. v. Gray, 178 F.Supp. 915, 918 (W.D.Ky.1959), aff'd, 285 F.2d 532 (6th Cir.1960). The broad national policy which prompted the 1967 Act cannot be ignored. Cf. Argosy Ltd. v. Hennigan, 404 F.2d 14, 20 (5th Cir.1968); Miller

v. Amusement Enterprises, Inc., 394 F. 2d 342, 353 (5th Cir.1968). Consequently, I do not find useful the defendant's generalization that since those who were to graduate after June 30, 1967, were to be precluded from a I-S, it would be manifestly unjust not to apply that same preclusion after that date to all earlier graduates.

A related argument of defendant is that in one sense plaintiff has already had more deferments than he is entitled to. The argument is that since Congress left graduate student deferments up to Presidential regulation, and the President gave students who were to enter graduate school in the fall of 1967 a II-S deferment for only their first year of graduate school, Congress could not have intended that these students receive a second year of deferment by means of the I-S. The difficulty with this argument is that it assumes that Congress wanted to place some absolute time limit on the length of graduate student deferments; there is no evidence that this is the case. It left the statutory provision for graduate II-S deferments unchanged, leaving to the President the determination of which *fields* of graduate study were essential to the national interest. It did not intimate that it was thereby giving the President the power to deprive *any* students of the statutory right to a I-S deferment.

Defendant's final argument is that § 6(i) (2) itself authorizes the President to undermine its provision for the I-S deferment. The defendant relies upon the last sentence of § 6(i) (2), which states: "Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment * * * of any category or categories of students for such periods of time as he may deem appropriate." This, defendant argues,

contemplates such regulations as 32 C. F.R. § 1622.15(b). This provision has been part of § 6(i) (2) since the 1948 Act. Even though the intended application is tolerably clear and specific, the Senate Report, S.Rep. No. 1268, 80th Cong., 2d Sess., in 1948 U.S.Code Cong. Serv., pp. 1989, 2002, makes it more so, it explains the meaning of the sentence: "This paragraph [§ 6(i) (2)] in no way interferes with the President's authority to provide *longer* deferments to students whose activity with regard to science, medicine, research, or other endeavor renders such longer deferment essential * * *."

■ As already noted, § 6(h) (1) provided for undergraduate deferments only until graduation, at which point those students were exposed to the same hazards of induction in the prime age group as their contemporaries who had not secured student deferments. Since virtually all persons entering graduate schools in the fall of 1968 or later would have had undergraduate II-S deferments under § 6(h) (1), by its express terms they would be ineligible for I-S deferments. In the face of that, to eliminate I-S for those students then in or about to enter graduate school would virtually emasculate § 6(i) (2).[8] The government's contention runs counter to the rule which requires the courts " 'to give effect, if possible, to every clause and word of a statute,' Montclair v. Ramsdell, 107 U.S. 147, 152 [2 S.Ct. 391, 395, 27 L.Ed. 431], rather than to emasculate an entire section, as the Government's interpretation requires." United States v. Menasche, 348 U.S. 528, 538–539, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955).

Instead of further enlarging the wide authority given the President with respect to graduate II-S deferments, by adding the power to cut-off I-S deferments under § 6(i) (2), there was good

---

8. Since the most recent graduates after that date were precluded from receiving a § 6(i) I-S, by the express terms of § 6(h) (1), the only possible remaining students who could qualify for I-S would be those who had successfully escaped a call for induction during four years at college without having ever asked for a II-S deferment.

reason to keep that authority within the expressed limits. As noted above, at p. 258, Congress did give consideration to the transitional years.

That Congress did not yield to the President the power to carve exceptions to the right of a student to a I–S in addition to those it had provided is illustrated by applying the maxim of statutory construction, *expressio unius est exclusio alterius*. Perhaps the exceptions are not expressed in gifted prose, but they certainly are not obscure. Three of them are in § 6(i) (2) in a proviso interrupted only by a colon from the clause granting the I–S deferment. The fourth exception, which is in § 6(h) (1), in addition to its serviceability for the *expressio unius* rule, directly supports a reasonable inference from within the statute that Congress intended to provide I–S deferments during the transitional years. It worded the proviso of § 6(h) (1) so as to apply only to persons who receive II–S deferments "under the provisions of *this* paragraph." (Emphasis added). "This paragraph" did not become operative until *after* June 30, 1967. I am unable to find anything in the statute which suggests that Congress left it to the President to judge for himself who should be deprived of the right to a I–S.

■ It follows from what has been said that the regulation in issue, 32 C.F.R. § 1622.15(b), as interpreted by defendant would be an addition to the statute of another exception to the right to a I–S classification, which is not there. Cf. United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957). Interpretation of regulations so as to make law are not favored. To uphold this additional exception "would be

to hold that it may be imposed by regulation, which, of course, the law does not permit." Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 92, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959).

Fortunately, the regulation, 32 C.F.R. § 1622.15(b), and Local Board Memorandum No. 87 may be read to conform with the statute. The relevant portion of the regulation is written:

"[N]o registrant shall be placed in Class I–S under the provisions of this paragraph

\*　　\*　　\*　　\*

"(2) who has been deferred as a student in Class II–S and has received a baccalaureate degree."

Subsection (2) must be read to exclude from the I–S classification only those persons who have been deferred in II–S after June 30, 1967,[9] and *thereafter* have received a baccalaureate degree. Such a reading would conform to §§ 6(h) (1) and 6(i) (2) of the Selective Service Act of 1967.

■ Since I hold that the regulation and memorandum must be read as described above, an order by this court to compel the defendant local board to grant the plaintiff a I–S deferment will not require the defendant to disregard the Presidential regulation. *See* p. 255. Therefore, relief under 28 U.S.C. § 1361 is not inappropriate. Similarly, since the plaintiff has a clear statutory right to a I–S deferment, not subject to local board discretion, I hold that § 10(b) (3) of the Act is not a bar to this court's jurisdiction. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).[10]

The local board's file on the plaintiff, James Carey, reflects nothing which in

9. Under Local Board Memorandum No. 87, the regulation has been interpreted to apply only to those persons who received their II–S deferments since July 1, 1967.

10. Breen v. Selective Service Local Board No. 16, 406 F.2d 636 (2d Cir. 1969), is not to the contrary. In *Breen*, the Court

of Appeals held that there was a sufficient foundation in § 6(h) (1) to indicate that Congress may have intended that undergraduate II–S deferments be limited by the delinquency regulations, and therefore, it could not be said that Breen had a clear statutory right to his deferment.

any way modifies the facts as set forth herein. Furthermore, the parties have stipulated to them. On that record, there is no basis for a denial of a I–S classification to the plaintiff. It is, therefore,

Ordered that the defendant Selective Service Local Board No. 2 classify the plaintiff James Carey I–S as of February 13, 1969.