Victor M. CATANO, Plaintiff,

v.

LOCAL BOARD NO. 94 SELECTIVE SERVICE SYSTEM, Bruno J. Kowalski, Kenneth R. Baless, William J. Flood, James F. Koch, Jr., Anthony N. Urillo, all Members of Local Board No. 94, Defendants.

Civ. A. No. 69–763.

United States District Court
E. D. Pennsylvania.

May 2, 1969.

Shuman, Denker & Land, Richard A. Axelrod, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, District Judge.

The plaintiff registrant is a full-time student in the second year of graduate study in psychology at Lehigh University. During the academic year 1967–1968 he enjoyed a II–S deferment. On June 7, 1968 the plaintiff was reclassified I–A. Having exhausted his appeal rights and having been found fit for induction, he requested a I–S deferment. His request was denied. The defendants have not responded to the plaintiff's written request for an appeal of the refusal to grant him a I–S deferment. The plaintiff's call to induction has been stayed until the decision on this case.

▉ The plaintiff seeks a writ of mandamus to compel the defendants to grant him a I–S deferment under Section 6(i) (2) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(i) (2) so that he may complete the current academic year of graduate study. The defendants move to dismiss on the ground, *inter alia,* that the court lacks jurisdiction to afford pre-induction relief. Section 10(b) (3) of the Act of 1967, 50 U.S.C. App. § 460(b) (3). The government agrees that the real question here is whether the deferment sought by the plaintiff is mandatory or whether it is within the discretion of the local board.[1] If it is mandatory, *i. e.,* "plain and unequivocal," we have jurisdiction notwithstanding the language of Section 10(b) (3). Ostereich v. Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed. 2d 402, 406 (1968).[2] Thus, our decision on the question of jurisdiction to ad-

judicate the merits of this case will constitute a decision on the merits as well.

The source of the plaintiff's asserted mandatory right to a I–S deferment is Section 6(i) (2), which reads:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948; or any person who has heretofore been deferred as a student under section 6(h) of such Act; or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section. Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate."

---

1. Government's brief, at 3–4.

2. Ostereich has spawned a number of cases involving facts similar to the present case. These cases, mostly not yet generally reported, are divided. For example, *compare* Foley v. Hershey, 409 F.2d 827 (C. A. 7, April 8, 1969), Bowen v. Hershey, 410 F.2d 962 (C.A. 1, March 26, 1969),

and Carey v. Local Board No. 102, 297 F.Supp. 252 (D.Conn., February 13, 1969), *with* Rich v. Hershey, 408 F.2d 944 (C.A. 10, April 1, 1969), Rosenfield v. Selective Service System Local Board No. 19, 298 F.Supp. 276 (W.D.Pa., February 13, 1969), and Kaplish and Dixon v. Hershey, F.Supp. (N.D.Ohio, February 7, 1969).

The question here, then, is whether the plaintiff falls within any of the three exceptions set out in the section. The defendants argue that the plaintiff falls within the second and third of these exceptions, as well as within an exception contained in a regulation promulgated pursuant to 6(i) (2).

*I.*

Has the plaintiff "been deferred under section 6(h) of [the Selective Service Act of 1948]?" Plaintiff was classified II–S as an undergraduate before the passage of the 1967 Act under the provisions of the law as it then stood, to wit, the 1948 Act, as amended by the Act of 1951. The government argues that the reference to the Selective Service Act of 1948 must be interpreted to include the 1951 Act, which, although it even changed the name of the earlier act, purported only to amend it. Act of June 19, 1951, ch. 144, § 1, 65 Stat. 75. It could also be argued that to interpret the exceptions to apply to deferments granted under the 1948 Act, unamended, would mean that the 1967 Act exceptions would operate only in a very limited sense. Marsano v. Laird, 298 F. Supp. 280 (E.D.N.Y., March 20, 1969). To come within the first two exceptions it would be necessary for a man to have had his induction postponed or deferred before June 19, 1951, the effective date of the 1951 Act. Assuming that a man could have received his postponement or deferment immediately after his registration with the local board, the youngest registrant within the class subject to the exceptions would have been over thirty-four years old on June 30, 1967, the effective date of the 1967 Act; he would have reached the age of twenty-six on June 18, 1959; and, unless he received a II–S under the 1951 Act, would, on the date the 1967 Act came into effect, have been immune from the draft for over eight years.

The plaintiff concedes that under his reading the first two exceptions would have applied to a very small and rapidly disappearing class on the date of the 1967 act (men deferred under the 1948 Act, who had their liability extended until age thirty-five by receiving a 6(h) deferment under the 1951 act or otherwise, and who were at least thirty-four years old). However, he points out that defendants' interpretation is at least equally unlikely: it would deny a I–S deferment to all who had ever received a II–S, contrary to the legislative intent in the enactment of Section 6(i) (2).

"* * * Although Congress expected that graduate II–S deferments would be reduced in proportion to the reduction of categories of graduate study, it did not intend that the rights of students in graduate schools to a I–S be disturbed. [citing the House Report and the Conference Report, the latter of which] specifically noted the 'strong conviction' of the House conferees that 'those students presently accepted for or actively participating in graduate studies, be permitted to continue these studies with a deferred status until they achieve or fail to achieve the degree which would normally make the completion of their present level of training.' Without an elaborate discussion of the mass of relevant considerations underlying this 'conviction' there was the concern of Congress with the expectations, careers, plans, and commitments up to that time of those currently in or about to enter graduate school. Although a I–S would not allow in every case for the completion of study over several years to a graduate degree, it would avoid the waste and hardship of an interrupted academic year."

Carey v. Local Board No. 102, 297 F. Supp. 258 (D.Conn. February 13, 1969).

The fact that the language of the exceptions refers to the 1948 act by its original name and not by the new name by which the act was amended in 1951 supports the plaintiff's position. In order to evaluate this issue it is necessary

to understand the function the two exceptions were to perform in the 1951 act, which were adopted without change in the 1967 act. Clearly, the first two exceptions were designed to exclude from the I–S classification those persons who had received student deferments under the 1948 act unamended, since those persons, if they did not receive II–S deferments under the 1951 act, would be liable only until age twenty-six. Congress did not want such people to insulate themselves from the draft past age twenty-six at which time they would be exempt. Carey, *supra*, 297 F.Supp. at 256 n. 5. This interpretation of the exceptions is strongly supported by the use of the word "heretofore." Rich v. Hershey, 408 F.2d 944, (C.A. 10, April 1, 1969) (judgment for defendant on another ground).

■ Other instrinsic evidence, moreover, leads to the ineluctable conclusion that Congress in 1951 never intended that men receiving II–S deferments under the amended act would be ineligible for the I–S classification. Briefly, the three exceptions applied to the following registrants:

(a) "any person who has *heretofore* had his induction *postponed* under the provisions of section 6(i) (2) of the Selective Service Act of 1948";

(b) "any person who has *heretofore* been deferred as a student under section 6(h) of such Act";

(c) "any person who is *hereafter* deferred under the provisions of this subsection". (Emphasis supplied.)

Two factors carry the day for the plaintiff. *First*, in referring to Section 6(i) (2) of the 1948 Act Congress used the word "postponed", which, before 1951, was the equivalent of being "deferred" through a I–S. Significantly, the word "postponed" was operative only in the years 1948 to 1951. Therefore, one must conclude that the Act of 1948 referred to was indeed the act which existed before the 1951 amendment, since induc-

tions were no longer "postponed" after 1951.

■ *Secondly*, we are persuaded that when Congress intended an exception to operate prospectively it was perfectly capable of making its intention clear. Note that Congress excepted men from the I–S "hereafter" deferred under "the provisions of this subsection." In sum, then, Congress in 1951 excepted from the I–S those whose induction had been *theretofore* postponed under the old Section 6(i) (2) as well as those *thereafter* deferred under new Section 6(i) (2). But although men who had *theretofore* been granted II–S deferments under the old Section 6(h) were excepted from the I–S classification, nothing was said about excepting men who would receive a II–S under the new Section 6(h) *thereafter*. *Expressio unius est exclusio alterius.*

■ We think, finally, that in reenacting these exceptions without change in 1967 Congress cannot be presumed to have added new meaning to the old language. Tyson v. United States, 285 F.2d 19 (C.A. 10, 1960).

## II.

■ The government argues that the registrant may not now avail himself of a I–S classification because in receiving his II–S deferment for graduate study in psychology for 1967–1968 he was "deferred under the provision of [Section 6(i) (2)]." The reasoning goes as follows. The registrant's II–S for graduate study was issued pursuant to Executive Order 11360, July 4, 1967, now appearing at 32 C.F.R. § 1622.26(b), which reads, in pertinent part:

" * * * Any registrant enrolled for his first year of post-baccalaureate study in a graduate school or a professional school on October 1, 1967 * * * may be placed in Class II–S * * * and shall be deferred for one academic year only * * *."

This regulation does not advert to the standards for II–S deferments set out in Section 6(h) (2). These standards

arguably require a finding that the deferment be "necessary to the maintenance of the national health, safety, or interest." Therefore, it is argued, the regulation is without the presidential authority conferred in that section. Rich v. Hershey, *supra*, 408 F.2d at 944. The relevant portions of Section 6(h) (2) reads as follows:

" * * * [T]he President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment * * * of persons * * * whose activity in .graduate study, research, or medical, dental * * * or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest * *."

The government is able to find statutory authorization for Executive Order 11360, however, in the last sentence of Section 6(i) (2):

" * * * Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment * * * of any category or categories of students for such periods of time as he may deem appropriate."

We believe that the Executive Order 11360 was properly executed under the authority of Section 6(h) (2); that as applied to this registrant the II–S deferment under the order was proper under Section 6(h) (2); and that, in any case, Section 6(i) (2) does not authorize the granting of II–S deferments to students whom the President is not authorized to defer under Section 6(h) (2).

To begin with, we think that Section 6(h) (2) grants the President broad authority to defer any graduate student whose activities are "necessary to the maintenance of the national health, safety, or interest." To this end it was per-

fectly proper for the President to defer all graduate students enrolled in the first year of post-baccalaureate study in a graduate or professional school on October 1, 1967 for a one year period in order that the academic careers of a large number of students and the welfare of the nation's graduate schools not be seriously injured because of increased manpower needs. In addition, the deferment of a registrant engaged in the graduate study of psychology could well be justified, on an individual basis, as a deferment within the terms of Section 6(h) (2).[3]

Finally, we think that it is quite clear that the language of the last sentence of Section 6(i) (2) merely states that the standards, exceptions, and qualifications which limit the availability of I–S deferments under that subsection are not meant to limit in any way the power of the President to grant II–S deferments under Section 6(h). At most it is an explanation of the standards contained in Section 6(h) (2). We cannot agree that Congress meant this sentence to create in the President a power to grant II–S deferments broader than that authorized in Section 6(h). Section 6(h) was designed to authorize II–S deferments; Section 6(i) was designed to authorize I–S deferments. It is highly unlikely that Congress would have given the President broad power to grant II–S deferments in the last sentence of Section 6(i) (2). Indeed, it is ironic that the government argues that language obviously designed to limit the effect of Section 6(i) (2) upon Section 6(h) should be read to expand the powers of the President to grant 6(h)-type, *i. e.*, II–S deferments. Thus, if the plaintiff's deferment is not authorized in Section 6 (h), it is likewise not authorized in Section 6(i). In any case, he has not been granted a II–S deferment under the terms of the last exception to Section 6(i) (2).

3. The deferment of one engaged in graduate study is thus distinguishable from a deferment to one engaged in professional study, such as a law student. See Rich v. Hershey, supra.

### III.

The government cites Selective Service regulation 32 C.F.R. § 1622.15(b) (2):

" \* \* \* [N]o registrant shall be placed in Class I–S \* \* \*

(2) who has been deferred as a student in Class II–S and has received his baccalaureate degree. \* \* \* "

This regulation on its face would appear to preclude plaintiff from receiving a I–S deferment. However, the Act itself provides for three exceptions, none of which we have decided is applicable here.

" \* \* \* The fourth exception, which is in § 6(h) (1), in addition to its serviceability for the *expressio unius rule,* directly supports a reasonable inference from within the statute that Congress intended to provide I–S deferments during the transitional years. It worded the proviso of § 6 (h) (1) so as to apply only to persons who receive II–S deferments 'under the provisions of *this* paragraph.' (Emphasis added). 'This paragraph' did not become operative until *after* June 30, 1967. I am unable to find anything in the statute which suggests that Congress left it to the President to judge for himself who should be deprived of the right to a I–S."

Carey v. Local Board No. 2, *supra,* 297 F.Supp. at 260.

■■ If the Regulation's intendment is to bar plaintiff from a I–S deferment, it is at war with the Act itself which we have concluded entitles plaintiff to a mandatory I–S deferment. The President is not at liberty to repeal congressional enactments. *Cf.* Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 92, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959). That function belongs to Congress alone. We will impute no such legally ineffectual purpose to the President, and it seems clear that no such purpose was intended.

" \* \* \* Subsection (2) must be read to exclude from the I–S classification only those persons who have been deferred in II–S after June 30, 1967, and *thereafter* have received a baccalaureate degree. Such a reading would conform to §§ 6(h) (1) and 6(i) (2) of the Selective Service Act of 1967."

Carey, *supra,* 297 F.Supp. at 260.

Accordingly, Local Board No. 94 is hereby ordered to reclassify the plaintiff I–S until the end of the academic year and the defendants are enjoined from proceeding with his induction during the period before the deferment is granted.