James R. NESTOR, Appellant,

v.

Lewis B. HERSHEY et al.

No. 23314.

United States Court of Appeals, District of Columbia Circuit.

Argued Aug. 19, 1969.

Decided Dec. 16, 1969.

Fred R. Joseph, with whom Karl G. Feissner, William L. Kaplan, Thomas P. Smith, and Andrew E. Greenwald, Hyattsville, Md., were on the brief, for appellant.

Ralph A. Fine, Atty., Department of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., Thomas A. Flannery, U. S. Atty., and Morton Hollander, Atty., Department of Justice, were on the brief, for appellees. John A. Terry and Joseph Hannon, Asst. U. S. Attys., also entered appearances for appellees.

Alan Dranitzke, Washington, D. C. (appointed by this court) as amicus curiae.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

ROBB, Circuit Judge:

Upon receipt of an order to report for induction into military service, appellant, a second-year graduate student in chemistry at the University of Maryland, sought from his local draft board and was denied a deferment from service until the completion of his then current academic year. Following appropriate but unsuccessful appeals through the Selective Service System, appellant invoked the jurisdiction of the District Court under the authority of the Supreme Court's decision in Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), to compel appellees to confer the deferment. We reverse the judgment of the District Court dismissing appellant's complaint.

Appellant's Selective Service file[1] indicates that he received a student deferment, Class II–S,[2] during four years in college prior to receiving his baccalaureate degree in June of 1967. In September of 1967, appellant entered

1. The following is a chronology of the events in appellant's Selective Service file which are important to the present lawsuit:

| | |
|---|---|
| October 2, 1943 | Born. |
| November 1, 1961 | Registered with Selective Service Board No. 101, Clayton, Missouri. |
| March 11, 1964 | Classified II–S until November 1, 1964 (Vote: 3–0). |
| November 18, 1964 | Classified II–A until November 18, 1965 (5–0). |
| October 20, 1965 | Classified II–S until October 31, 1966 (4–0). |
| December 21, 1966 | Classified II–S until July 1, 1967 (3–0). |
| July 26, 1967 | The local board received notification from the College of Arts and Sciences of St. Louis University that appellant "completed his 4 college years" at the college. |
| August 16, 1967 | Classified I–A. |
| August 31, 1967 | Reported for physical examination and was found acceptable. |
| September 27, 1967 | Appeared for personal appearance and requested a II–S graduate deferment having entered graduate study at the University of Maryland. |
| October 18, 1967 | Classified II–S until June 1, 1968 (4–0). |
| July 24, 1968 | Classified I–A (3–0). |
| September 4, 1968 | Appeared for personal appearance. |
| September 4, 1968 | Classified I–A (3–0). |
| October 3, 1968 | Appealed to Maryland Appeal Board. |
| December 10, 1968 | Classified I–A by Appeal Board (2–1). |
| January 6, 1969 | Appealed to the President. |
| March 24, 1969 | Classified I–A by Presidential Appeal Board (3–0). |
| April 11, 1969 | Ordered to report for induction May 13, 1969. |
| April 28, 1969 | Local Board received letter from the University of Maryland requesting postponement of induction "until the end of the present semester which will be June 7". |
| April 29, 1969 | Local Board received appellant's request, dated April 28, 1969, for a I–S classification. |
| May 1, 1969 | Induction postponed until "First call June 1969". |
| June 3, 1969 | Letter informing appellant to report for induction on June 20, 1969 in Missouri. |
| July 27, 1969 | Appellant's induction transferred to Maryland. Appellant ordered to report on August 6, 1969. |

2. The Selective Service classification symbols are not prescribed by statute but merely serve as shorthand representations that a registrant's qualifications fit a particular statutory prescription. Three classification symbols are of special importance to appellant and are used throughout this opinion:

*Class I–A:* This denotes that a registrant has not established that he is entitled to any other classification, and thus is immediately available for induction. 32 C.F.R. § 1622.10.

*Class II–S:* Before July, 1967 Class II–S denoted a student deferment under sub-section 6(h) of the Universal Military Training and Service Act of 1951, which was granted in the discretion of the local board. After the Military Selective Service Act of 1967 replaced the old statute it became important to distinguish between deferments granted to undergraduate students, which are mandatory under new paragraph 6(h) (1), and deferments to graduate students, which remain discretionary on the President's determination of the national health, safety, and interest under paragraph 6(h) (2). 32 C.F.R. §§ 1622.25, 1622.26.

graduate school at the University of Maryland and was granted a II–S graduate student deferment for his first year of study at that institution. On July 24, 1968, at the end of his first year in graduate school, appellant was reclassified I–A, as immediately available for military service. Unsuccessful in his personal appearance before his draft board, Local Board No. 101, in Clayton, Missouri, and in his appeals to the Missouri State Appeal Board and to the President, appellant had exhausted all available appellate procedures by March of 1969. During this interval appellant commenced his second year of graduate studies. On April 11, 1969, when appellant received a notice to report for induction in St. Louis, Missouri on May 13, 1969, he made a timely request that his induction order be cancelled and that he be reclassified I–S until the end of his current academic year. Appellant's request was denied, although at the request of Maryland University officials his induction was postponed until the first draft call of June 1969. Finally, appellant asked that his June induction order be transferred to Local Board No. 55 in Hyattsville, Maryland. This request was granted, and appellant was ordered to report for induction on August 6, 1969.

On June 2, 1969, having received no affirmative action on his request for I–S classification from his local board or the Missouri State Headquarters, appellant began the present action in the United States District Court for the District of Columbia. He named as defendants Selective Service Director Lewis B. Hershey, the Missouri local board, the Maryland transfer board, and various members of the Selective Service System. He requested a preliminary injunction against the pending induction order and a writ of mandamus compelling the defendants to reclassify him I–S. On July 16, 1969 the District Court entered an order granting appellees' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The court first held that "[t]he academic year at the University of Maryland has ended and plaintiff has not been subjected to induction into the armed forces. His action for a I–S deferment is therefore moot." Second, the court concluded that the classification of registrants is the responsibility of local draft boards and that the Director of Selective Service was therefore not a proper party defendant and venue did not lie in this district. On July 28, 1969, a notice of appeal was filed, and on August 1, 1969, this Court heard argument on appellant's emergency motion for a stay of induction pending appeal. Appellant's induction was stayed pending further argument and consideration of the appeal.

## I. IMPACT OF RECENT CHANGES IN SELECTIVE SERVICE LAW

The Selective Service law has developed over the years into an intricate maze through which the uninitiated lawyer, let alone a young man subject to the law's provisions, cannot easily find his way. Accordingly, as an aid to an understanding of what follows, we

*Class I–S:* This classification parallels the provisions of subsection 6(i) of the Act. There are two varieties of I–S deferments: I–S (H) and I–S(C). The former is a classification given full-time high school students until they graduate, reach the age of twenty or cease full-time attendance, whichever occurs first. Class I–S(C), on the other hand, applies to graduate and undergraduate college students who receive orders to report for induction while attending school full time. It is granted, with important exceptions, to any student who receives an order of induction while he is attending school on a full-time basis. The deferment is effective until the end of the student's current academic year. 32 C.F.R. § 1622.15. It is the I–S(C) classification (hereafter referred to as "I–S") which is involved in this case.

begin our examination with a survey of the impact which recent changes in the Selective Service law have had upon appellant and many of his graduate school contemporaries.

Prior to the passage of the Military Selective Act of 1967, 50 U.S.C. App. §§ 451 *et seq.* (Supp. IV, 1965–1968), eligibility for student deferment from induction depended on the discretionary determination by the individual registrant's local draft board that the classification was necessary to the maintenance of the national health, safety, or interest. Universal Military Training and Service Act, Ch. 144, § 6(h), 65 Stat. 84 (1951). Except on comparatively rare occasions when a local board experienced unusual shortages of immediately available men, however, student deferments were uniformly granted as a matter of course to undergraduates and usually granted to graduate students.

By the 1967 Act, Congress substantially revised the provisions dealing with student deferments. Undergraduate or pre-baccalaureate students were made the beneficiaries of a mandatory deferment, 50 U.S.C.App. § 456(h) (1) (Supp. IV, 1965–1968), while graduate students continued to be granted discretionary deferments based upon a re-examination of the requirements of the national interest, 50 U.S.C.App. § 456(h) (2) (Supp. IV, 1965–1968). It was generally anticipated that the policy of wholesale graduate deferments was to be discontinued and educational deferments in the national interest carefully limited. Accordingly, on April 19, 1968, the President, acting through the Director of the Selective Service and upon the advice of the National Security Council, restricted the fields of "national interest" graduate study to the allied medical sciences. 32 C.F.R. § 1622.26(a).

The combination of statutory changes and correlated regulations would have seriously disrupted the pursuit of graduate studies by those students who, in reliance upon the prior law, had already begun studies leading to a post-baccalaureate degree on the effective date of the 1967 Act, or who were planning immediately to begin such a program. In order to prevent a major dislocation within the nation's graduate schools, the President therefore chose to permit those students who were beginning their second or subsequent year of graduate studies on October 1, 1967 to complete the work required for their degrees. Those who were starting their first year of graduate school on that date, however, were to be granted only one additional year of deferment. Exec. Order No. 11,360, 32 C.F.R. § 1622.26(b).

Like appellant, many of those who started their graduate work in the fall of 1967 and who completed their first year in the spring of 1968 were reclassified I–A during that summer, but were not ordered to report for induction until they had begun their second year of study. When their induction orders were issued during their second academic year, some dropped out of school and promptly entered service, others merely sought a postponement of induction until the end of the school term, and still others, including appellant, sought a I–S deferment until the completion of the academic year.

The advantage of the deferment procedure as opposed to postponement of induction is clear. Once the postponement period lapses, the registrant is immediately subject to an outstanding induction order. With an induction order outstanding, even though it has been postponed, the local board ordinarily can reopen the registrant's classification only when his status has changed due to circumstances beyond his control. 32 C.F.R. § 1625.2. On the other hand, at the end of the effective period of the I–S deferment, the local board is required to take affirmative action to reclassify the registrant, a process which is attended with the usual steps for appeal and review. The registrant in this situation is able to take steps such as seeking and accepting employment of a type which would justify his local board in granting an occupational deferment.

For obvious reasons, then, appellant sought a deferment instead of contenting himself with postponement of induction. The question here is whether appellant is entitled under the Act to adopt what he believed to be the more advantageous procedure.

It is in the context of this survey that we now turn to the specific substantive matters raised on appeal. We treat the issues of subject matter jurisdiction and the proper construction of the student deferment statute first, since it is only through an understanding of these matters that we can properly examine the correctness of the District Court's rulings on venue and mootness.

## II. SUBJECT MATTER JURISDICTION

Appellees first question the jurisdiction of this Court to review the withholding of a Selective Service deferment. Section 10(b) (3) of the 1967 Act, 50 U.S.C.App. § 460(b) (3) (Supp. IV., 1965–1968) provides:

> "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under Section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, * * * "

Although Section 10(b) (3) thus appears to deny all preinduction judicial review, the Supreme Court has held that its command cannot be taken literally so as to preclude review of draft board actions which are outside the statutory scheme or involve a capricious violation of a statutory mandate. Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); cf. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

The Oestereich case involved an arbitrary revocation of an exemption from military service held by a theological student preparing for the ministry. The Supreme Court concluded that the IV–D divinity student classification was mandated by the clear and unambiguous terms of the Act and that the local board thus acted improperly and without statutory authority in removing the mandatory IV–D classification. The Court held that pre-induction judicial review must be allowed where there exists a clear statutory grant of a classification, the decision that a registrant fits that classification neither involves the exercise of discretion or judgment nor requires resolution of complex factual issues, and the local board's action denying a requested classification contravenes a clear statutory command. 393 U.S. at 238, 89 S.Ct. 414. Acknowledging that the literal language of Section 10(b) (3) would prevent Oestereich from obtaining judicial redress prior to induction, the Court refused "to construe the Act with unnecessary harshness" and held that where the statutory grant of a classification "is plain and unequivocal * * * pre-induction judicial review is not precluded * * *." 393 U.S. at 238–239, 89 S.Ct. at 417.

Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), decided the same day as the Oestereich case, further clarified the role which the exercise of discretion by the local board has in determining the availability of pre-induction judicial review. There the Supreme Court concluded that the denial of conscientious objector status is not subject to such review because the board has statutory authority to make appropriate findings of fact and to exercise its judgment on the registrant's eligibility for the classification. The Court pointed out that the I–O conscientious objector classification is merely authorized by the Act and its issuance is expressly conditioned on the registrant's claim being "sustained by the local board". 50 U.S.C.App. § 456(j) (Supp. IV, 1965–1968). Unlike the local board's action in the Oestereich case, the refusal to grant conscientious objector status thus "inescapably involves a determination of fact

and an exercise of judgment." 393 U.S. at 258, 89 S.Ct. at 426.

The threshold question in this case is whether the claim of a I–S deferment is sufficiently similar to that made by Oestereich to avoid Section 10(b)(3)'s prohibition against pre-induction judicial review, or whether its grant or denial involves some exercise of discretion, as in the case of Gabriel, thus precluding such review.

▮ The fact that the *Oestereich* case involved an exemption while this case involves a deferment is not crucial. The Solicitor General in the *Oestereich* case suggested that the Supreme Court adopt a rule under which Section 10(b)(3) would be read to bar pre-induction review in cases involving deferments, but not in cases of exemptions. As we read the *Oestereich* and *Gabriel* cases, however, the Court declined to adopt this distinction and instead rested its decision in each case on the distinction between mandatory classifications explicitly required by statute and discretionary classifications calling for the exercise of local board judgment in determining facts and evaluating evidence.[3]

We believe that the recent decision by the Tenth Circuit in Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969) properly formulated the jurisdictional question in the context of the I–S deferment:

"*Oestereich* was concerned with a statutory exemption. We are concerned with a statutory deferment. In our opinion the difference is unimportant. If the right to the deferment is absolute and the Selective Service has a statutory mandate to grant it, *Oestereich* controls and the action is not barred by § 10(b)(3).

The contrary is true if the grant of the deferment is discretionary."

408 F.2d at 946. Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969), which reaches the opposite result on the merits, has stated the issue similarly:

"We see no distinction between the Director's unlawful removal of a statutorily granted exemption, *Oestereich*, supra, and equally unlawful refusal to grant a statutorily required deferment. *See* Kimball v. Selective Service Local Board No. 15, S.D.N.Y., 1968, 283 F.Supp. 606, 608. The single question to be decided, whether it be termed jurisdictional or substantive, is whether the statute mandated, or merely permitted, the deferment."

410 F.2d at 964.

▮ Under our view of the Supreme Court's decision in the *Oestereich* case, the issue of jurisdiction is inextricably intertwined with the merits of the controversy, that is, with the proper construction of the student deferment sections of the Act, 50 U.S.C.App. §§ 456(h) and (i) (1964 & Supp. IV, 1965–1968); in short, the question of jurisdiction hinges upon whether the deferment sought is mandated by statute or is within the discretion of the draft board. If the deferment is mandatory, we have jurisdiction. On the other hand, if appellant's local draft board has discretion to deny his request for a I–S classification, we have no jurisdiction to review its action. Since we always have jurisdiction to determine our jurisdiction, we turn now to the merits of appellant's claim that he is entitled to a mandatory deferment under the Act. See United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1957).

3. We reject the government's contention that the *Oestereich* decision was prompted mainly by the government's confession of error and concession that the exemption involved there was indeed statutorily mandated. "A government admission provides persuasive evidence that the statutory right is clear, but such an admission is not essential. The jurisdiction of the district courts cannot be supposed to turn on the amiability of the government." Crane v. Hershey, 410 F.2d 966, 967 n. 1 (1st Cir. 1969).

## III. THE STUDENT DEFERMENT SECTIONS OF THE MILITARY SELECTIVE SERVICE ACT OF 1967

Both sides agree that if appellant is entitled to a I–S deferment, it is on the authority of paragraph 6(i) (2) of the Military Selective Service Act of 1967.[4] The proper construction to be given to that paragraph is not a new question, for the issues raised here have generated much recent litigation in the federal courts. Numerous district courts and four courts of appeals have ruled on the proper statutory construction. Three of the four circuits which have considered the question have held that paragraph 6(i) (2) requires registrants like appellant to be placed in Class I–S;[5] one circuit has held that the classification is not available to registrants in appellant's position.[6] We agree with the reading given paragraph 6(i) (2) by the First, Second and Seventh Circuits, finding their construction of the statute more consistent with both the literal language and the purpose of the paragraph than the construction placed upon it by the Tenth Circuit.

### A. The First Clause of Paragraph 6(i) (2)

The right to be deferred until the end of the relevant academic year is mandated by the plain language of the first clause of paragraph 6(i) (2) of the Act, which provides:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar

4. "Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, [or] (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948; or any person who has heretofore been deferred as a student under section 6(h) of such Act; or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section. Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate." 50 U.S.C.App. § 456(i) (2) (1964).

5. Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969); Carey v. Local Board No. 2, 412 F.2d 71 (2d Cir. 1969);

Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969). See also United States v. Rundle, 413 F.2d 329 (8th Cir. 1969). Similarly, in four cases in the United States District Court for the District of Columbia, the I–S classification was held to be statutorily mandated: Kravik v. Hershey (D.D.C. March 11, 1969) (Bryant, J.); Cooper v. Hershey, 2 SSLR 3015 (D.D.C. May 14, 1969) (Gesell, J.); Nussbaum v. Hershey, 2 SSLR 3015 (D.D.C. May 14, 1969) (Gesell, J.); Zito v. Hershey, 2 SSLR 3015 (D.D.C. May 19, 1969) (Gesell, J.). Other district court decisions which have accepted appellant's view on the merits are: Armendariz v. Hershey, 295 F.Supp. 1351 (W.D.Texas 1969), appeal dismissed as moot, 413 F.2d 1006 (5th Cir. 1969); Ellis v. Hershey, 302 F.Supp. 347 (E.D. Mich.1969); Catano v. Local Board No. 94, 298 F.Supp. 1183 (E.D.Pa.1969); Weppler v. Hershey, 308 F.Supp. 447 (N.D.Ill. June 3, 1969); Keller v. Hershey, 309 F.Supp. 687 (S.D.Fla. June 16, 1969).

6. Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969). The government also has been successful in the following cases in the district courts: Rosenfeld v. Local Board No. 19, 298 F.Supp. 276 (W.D.Pa.1969); Dickens v. United States, 308 F.Supp. 1124 (S.D.Iowa Feb. 13, 1969); Minnis v. Commanding Officer, 298 F.Supp. 767 (N.D.Ohio 1969); Davis v. Hershey, 310 F.Supp. 565 (C.D.Calif. July 11, 1969); Green v. Hershey, 302 F.Supp. 43 (N.D.Texas 1969).

institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, [or] (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: * * *."

50 U.S.C.App. § 456(i) (2) (1964).

Upon the objective fact of full-time attendance at a university being presented to it, the local board *"shall"* defer the registrant until the end of the academic year or until he ceases satisfactorily to pursue his course of study, whichever is earlier. The board places such a registrant in Class I–S and refers to him as a "Student deferred by statute." 32 C.F.R. § 1622.15.

This I–S classification differs sharply from the customary student deferment, the II–S.[7] The II–S classification, awarded under subsection 6(h) of the 1967 Act, carries the deferment given students to enable them to complete an entire course of study found necessary in the national interest. It is the II–S classification that is generally regarded as the "student deferment", and it is the classification held by the vast majority of deferred undergraduate and graduate students. The mandatory I–S classification under paragraph 6(i) (2), on the other hand, may be given only after receipt of an induction order, and a registrant may receive it only once in his lifetime. Unlike the II–S, designed to permit education in the national interest, the I–S classification is intended to avoid the hardship and waste of an interrupted academic year. In permitting its student recipient to complete the academic year in which he received an induction order, the I–S classification saves him from the loss of academic credit and tuition which would otherwise result from the interruption of his school year.

This objective had been achieved under prior law by postponing the induction of such students until the end of their academic year. Selective Service Act of 1948, Ch. 625, § 6(i) (2), 62 Stat. 612 (1948). Congress changed this practice from postponement to deferment when it enacted paragraph 6(i) (2) in its present form in 1951. Universal Military Training and Service Act, Ch. 144, § 6(i) (2), 65 Stat. 85 (1951).

Appellant met each of the requirements for the I–S classification established by the first clause of paragraph 6(i) (2) of the 1967 Act at the time he requested a I–S classification. He had been satisfactorily pursuing a full-time course of instruction at the University of Maryland, and he had been ordered to report for induction. He presented these facts to his local board and requested classification as I–S. This request was denied.

B. *The Three Provisos of*
*Paragraph 6(i) (2)*

The unequivocal grant of the I–S deferment in the first clause of paragraph 6(i) (2) is followed by three provisos which qualify the right to receive the I–S classification,[8] and by an additional sentence which makes it clear that paragraph 6(i) (2) is not meant to interfere with the President's authority to provide for II–S deferments under subsection 6(h). Since paragraph 6(i) (2) is crucial, each clause is individually set out.

[First Clause] "Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, [or] (B) until

---

7. See Note 2.

8. There are in fact four statutory qualifications to the unequivocal right to deferment granted by the first clause of

paragraph 6(i) (2). As noted, three of them are provisos contained in paragraph 6(i) (2) itself. The fourth appears in the fourth sentence of paragraph 6(h) (1).

he ceases satisfactorily to pursue such course of instruction, whichever is the earlier:

*Provided,*

[First Proviso] That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948;

[Second Proviso] or any person who has heretofore been deferred as a student under section 6(h) of such Act;

[Third Proviso] or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section.

[Last Sentence] Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any category or categories of students for such periods of time as he may deem appropriate."

■ We conclude that none of the three provisos applies to appellant. The first is inapplicable because he has never had his induction postponed under Section 6(i) (2) of the Selective Service Act of 1948. The second proviso does not apply because appellant has never been deferred as a student under Section 6(h) of the 1948 Act. The third proviso is inapplicable because appellant has never been deferred under the provision of subsection 6(i); he has never been placed in Class I–S. In sum, appellant fits precisely within the first clause of paragraph 6(i) (2) and none of these three provisos removes him from its ambit.

Congress has rewritten the draft law on three occasions in the last twenty years, first in 1948 (Selective Service Act of 1948), again in 1951 (Universal Military Training and Service Act of 1951), and most recently in 1967 (Military Selective Service Act of 1967).[9] Thus, the 1948 Act was only in effect for three years, between June 24, 1948 and June 19, 1951, the effective date of the Universal Military Training and Service Act. Appellant having become eighteen years of age in 1961, he was originally classified under the provisions of the 1951 Act and received his undergraduate deferments under that statute. He received his graduate school deferment under the 1967 Act and now seeks a I–S deferment under this statute. At no time has he been registered or classified under the 1948 law.

The first two provisos of paragraph 6(i) (2) explicitly refer to persons affected by the Selective Service Act of 1948. Had Congress intended to include those persons registered after 1951— that is, had Congress actually intended the section to read "the Selective Service Act of 1948 *as amended*"—it would have used the correct name of the superseding statute, the Universal Military Training and Service Act. Retention of the reference to "the Selective Service Act of 1948," despite careful revision of Section 6 in 1967 indicates that Congress intended the first two provisos to apply only to those whose induction was postponed during the period in which the Selective Service Act of 1948 was effective under that name, the period from June 24, 1948 to June 19, 1951. We are further led to our conclusion that Congress meant the 1948 Act, as it existed between 1948 and 1951, by the use in the first exception of the word *"post-*

---

**9.** Selective Service Act of 1948, Ch. 625, § 1(a), 62 Stat. 604 (1948); Universal Military Training and Service Act, Ch. 144, § 1(a) 65 Stat. 75 (1951); Military Selective Service Act of 1967, 50 U.S.C. App. § 451(a) (Supp. IV, 1965–1968).

*poned.*" The 1948 Act alone provided for postponement of induction rather than deferment which was the technique of the 1951 Act. The conclusion follows that by the use of the word "postponed," Congress indeed meant to refer to the 1948 Act as it existed prior to the 1951 amendments.[10]

The 1951 Act for the first time extended liability for service beyond the age of twenty-six to persons who received student deferments under that statute. Universal Military Training and Service Act, Ch. 144, § 6(h), 65 Stat. 84 (1951). Those who had been deferred as students under the 1948 Act, however, did not face an extension of liability to age thirty-five. In order to provide a modicum of equal treatment, those deferred during the 1948–1951 period under Sections 6(h) and (i) of the 1948 Act were not to receive the additional opportunity to delay induction under paragraph 6(i) (2). Thus, the first two provisos of Section 6(i) (2) were added to the 1951 Act in order to deny further deferments to such persons.[11]

The government has urged that to exclude persons classified after 1951 from the two exceptions which refer to the 1948 Act would confine the effect of these provisions, at the time they were included in the 1967 Act, to "a very small and rapidly disappearing class" of registrants; that this is so because only a very small number of registrants whose inductions were postponed between 1948 and 1951 would still have been eligible for service in 1967. But the opposite conclusion would force us to find that the I–S deferment is unavailable to anyone who has ever had a II–S classification. By the express terms of the statute, no person who is granted an undergraduate II–S classification under the provisions of paragraph 6(h) (1) of the 1967 law is eligible for I–S treatment. 50 U.S.C. App. § 456(h) (1) (Supp. IV, 1965–1968); and if we read the Selective Service Act of 1948 to refer to the law as it existed from 1948 to 1967 rather than from 1948–1951, then no person who has received II–S treatment prior to 1967 is eligible for Class I–S. Such an interpretation of the statute would mean that the main body of paragraph 6(i) (2) would have had virtually no effect on the very day it was written into law in 1967. A construction of a statute which deprives it of any real effect does not impress us.

■ The third proviso of paragraph 6(i) (2) precludes the grant of a I–S deferment to "any person who hereafter is deferred under the provision of this subsection". 50 U.S.C.App. § 456(i) (2) (1964). Appellant has never received a classification designated as a I–S deferment, but he did receive a II–S deferment for his first year of graduate study pursuant to Executive Order No. 11,360, 32 C.F.R. § 1622.26(b). That Presidential directive provided that "[a]ny registrant enrolled for his first year of post-baccalaureate study in a graduate school or professional school on October 1, 1967 * * * may be placed

10. This conclusion is supported by the legislative history of the 1951 Act, for the House committee report states:

"The present Selective Service Act [Act of 1948] authorizes the *postponement* of induction of any person pursuing a full-time course of instruction in college until the end of the academic year. The proposed subsection removes the *postponement* feature and permits such students to be *deferred* until the completion of the academic year. However, the proposed provision will not permit college students who have once been deferred to complete an academic year, or whose induction has been once postponed to complete an academic year, to be further deferred to complete another academic year, under the authority of this subsection. This, however, will not preclude the additional deferment of such students under regulations issued by the President." (Emphasis added.) H.R.Rep.No. 271, 82nd Cong., 1st Sess., 2 U.S.Code Cong. & Admin.Serv., 1472, 1500 (1951).

11. See Note 10.

in Class II–S \* \* \* and shall be deferred for one academic year only \* \* \*." 32 C.F.R. § 1622.26(b). The President issued Executive Order No. 11,360 on July 4, 1967, four days after the effective date of the new Military Selective Service Act of 1967, in order to prevent a ruinous disruption of the nation's graduate schools and to avoid or reduce to a minimum the interruption of a course of study begun in reliance upon the old law. Appellees argue that Executive Order No. 11,360 was authorized by the last sentence of paragraph 6(i) (2) and that appellant, having received one deferment pursuant to the Executive Order, is precluded by the third proviso of paragraph 6(i) (2) from receiving a further deferment under subsection 6(i) of the 1967 Act. However, we conclude that Executive Order No. 11,360 was not issued pursuant to the last sentence of paragraph 6(i) (2) but under paragraph 6(h) (2) which authorizes the President to provide for the deferment of graduate students in the national interest.[12] His determination in July of 1967 to continue deferments during a transition period from the 1951 Act to the new law obviously was a judgment promoting the national interest.

This conclusion is further supported by an examination of the language of the last sentence of paragraph 6(i) (2), which appellees erroneously contend was the authority for the issuance of Executive Order No. 11,360. That sentence provides:

"Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service \* \* \* of any category or categories of students for such periods of time as he may deem appropriate."

50 U.S.C.App. § 456(i) (2) (1964). In other words, "Nothing in this paragraph"—paragraph 6(i) (2)—concerning the I–S classification, is to be read as reducing the President's power to make regulations "under subsection (h)" with respect to the II–S classification. The last sentence of paragraph 6(i) (2) is not a grant of authority, but is merely a clarification, designed to dispel any doubts that paragraph 6(i) (2) is intended to limit the authority already granted under subsection 6(h). As noted by the Senate committee report on the 1948 Act, that sentence is intended only to make it plain that paragraph 6(i) (2) shall "in no way interfere" with the Presidential rulemaking power, *conferred elsewhere in the Act*, to provide "longer deferments."[13] Thus, it is clear that Executive Order No. 11,360, under which appellant received his II–S deferment for his first year of graduate study, was authorized not by paragraph 6(i) (2) but by virtue of subsection 6(h) of the Act. As a result, he is not precluded by the third proviso of paragraph 6(i) (2) from receiving the I–S deferment mandated by the plain language of the first clause of that paragraph.[14]

12. "Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons \* \* \* whose activity in graduate study \* \* \* is found to be necessary to the maintenance of the national health, safety, or interest \* \* \*"
50 U.S.C.App. § 456(h) (2) (Supp. IV, 1965–1968).

13. The Senate committee report explained the sentence with these words:
"This paragraph [6(i) (2)] in no way interferes with the President's authority to provide longer deferments to students whose activity with regard to science, medicine, research, or other endeavor renders such longer deferment essential to the providing of an adequate flow of persons into categories found to be critical by the National Security Resources Board, acting in its prescribed capacity."

S.Rep.No.1268, 80th Cong., 2d Sess., 2 U.S.Code Cong.Serv. 1989, 2002 (1948).

14. Appellees also question our conclusion that Executive Order No. 11,360 was issued pursuant to paragraph 6(h)(2) on the ground that at the time of its issuance

## C. *The 6(h) (1) Exception*

The fourth qualification to the statutory right to a I-S deferment is found in paragraph (1) of subsection 6(h), which provides in pertinent part:

"No person who has received a student deferment under the provisions of *this paragraph* shall thereafter be granted a deferment under this subsection, *nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree*, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the mainten-

ance of the national health, safety, or interest." (Emphasis added.)[15]

The government contends that appellant enjoyed an undergraduate II-S deferment under paragraph 6(h)(1) of the predecessor statute and, having since received his baccalaureate degree, he is precluded by the terms of paragraph 6(h)(1) from receiving a deferment under 6(i)(2). We cannot accept this reading of paragraph 6(h)(1).

As noted earlier, subsection 6(h) of the 1951 Act and its implementing regulations provided for the discretionary deferment of students whose activity was found necessary to the national health, safety, or interest. The 1967 law radical-

the President had already acted under that paragraph to limit to the medical sciences the list of critical fields of graduate study meriting deferment. Yet the list of critical occupations and fields of study was not promulgated in its present form by the National Security Council until February of 1968, over six months after the President issued Executive Order No. 11,360. See LBM No. 95 (April 19, 1968); Memorandum for the National Security Council of February 14, 1968. Nor are the two executive judgments inconsistent. Although appellant was not entitled to a graduate II–S deferment because of a critical shortage of chemists, he was entitled to a deferment under paragraph 6(h)(2) because of his place in a transitional group whose members had made plans for graduate study in reliance upon the old law.

15. 50 U.S.C. App. § 456(h) (1) (Supp. IV, 1965–1968). The entire provision dealing with undergraduate deferments reads as follows:

"Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth

anniversary of the date of his birth, whichever first occurs. Student deferments provided for under this paragraph may be substantially restricted or terminated by the President only upon a finding by him that the needs of the Armed Forces require such action. No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest. Any person who is in a deferred status under the provisions of subsection (i) of this section after attaining the nineteenth anniversary of the date of his birth, or who requests and is granted a student deferment under this paragraph, shall, upon the termination of such deferred status or deferment, and if qualified, be liable for induction as a registrant within the prime age group irrespective of his actual age, unless he is otherwise deferred under one of the exceptions specified in the preceding sentence. As used in this subsection, the term 'prime age group' means the age group which has been designated by the President as the age group from which selections for induction into the Armed Forces are first to be made after delinquents and volunteers."

ly altered the provisions of subsection 6(h), dividing it into two paragraphs, leaving deferments for graduate students within the discretion of the President, 50 U.S.C. App., § 456(h) (2) (Supp. IV, 1965–1968), but making undergraduate student deferments mandatory, 50 U.S.C. App., § 456(h)(1) (Supp. IV, 1965–1968). However, Congress extracted a price for granting the mandatory undergraduate deferment. The fourth sentence of paragraph 6(h)(1) provides that a registrant who takes advantage of his mandatory right to such an undergraduate deferment cannot thereafter be given a I-S deferment. This penalty is part of the general revision of the scheme of undergraduate deferments which Congress undertook in 1967, and is intended to prevent the "pyramiding" of the now mandatory undergraduate deferments, available as a matter of course, into an outright exemption from military service.[16] Under the fourth sentence of paragraph 6(h)(1), a student who requests and receives a II-S deferment as an undergraduate after the enactment of the 1967 Act cannot thereafter receive a I-S deferment if he is called for induction while in graduate school.

But appellant was awarded undergraduate deferments not on the mandatory basis of the 1967 Act but under the discretionary provisions of the 1951 Act. When paragraph 6(h)(1) refers to persons deferred "under the provisions of *this paragraph*," it is clear that Congress meant paragraph 6(h)(1) as written in 1967. Congress could not have meant to include within the sweep of the paragraph's prohibitions those, like appellant, who were deferred as students under the earlier law. There are at least three reasons which compel this conclusion.

First, paragraph 6(h) (1) had no predecessor paragraph. As noted, old subsection 6(h) of the 1951 Act substantially became paragraph 6(h)(2) of the new statute; paragraph 6(h)(1) was totally new to the statute. The fourth sentence denying the I-S classification to persons deferred under "this paragraph" cannot apply to persons deferred prior to June 30, 1967 because there was no such "paragraph" before that date. Second, the prohibition of paragraph 6(h)(1) against successive deferments under the provisions of subsection 6(h) cannot be interpreted to include persons who received their undergraduate deferments prior to 1967, because when student deferments were discretionary, it was the common practice to reclassify registrants during the summer of each year. Thus, appellant received four separate, successive II-S deferments during the period from 1964 to 1967, a method of periodic reclassification which is not sanctioned under paragraph 6(h)(1) of the 1967 statute. The new provision for mandatory undergraduate deferments has replaced this system of annual reclassification with a blanket deferment for the entire pre-baccalaureate period. Finally, the second prohibition of paragraph 6(h)(1) denies deferment under the provisions of subsection 6(i) only to "*such* person" as is described in the immediately preceding clause, that is, one "who has received a student deferment under the provisions of this paragraph." Since "this paragraph" is paragraph 6(h)(1) and since paragraph 6(h)(1) was enacted on June 30, 1967, the penalty provided in its fourth sentence can refer only to those who have received their baccalaureate degrees *after June 30, 1967*. Similarly, since "this paragraph" is paragraph 6 (h) (1) and since paragraph 6(h) (1) relates exclusively to student deferments for undergraduates, the penalty provided in its fourth sentence can refer only to those who were deferred as *undergraduate* students. Because appellant is not "such [a] person," he does not come

16. There are two other penalties which Congress wrote into the 1967 Act, which are also intended to prevent the "pyramiding" of the now mandatory undergraduate deferment: The recipient's draft liability extends to age thirty-five, and upon graduation he reverts to a prime age group of eligible candidates for induction. See 50 U.S.C. App. §§ 456(h) (1), 456(h) (2) (Supp. IV, 1965–1968).

within the fourth exception to the general rule of paragraph 6(i)(2).

A close reading of paragraph 6(h)(1) and a comparison with the provisions of the 1951 law lead inevitably to the conclusions we have reached above. However, statutory construction is not the specialty of most local draft boards. Their understanding of the law often must be guided by instructions from their state headquarters and from the office of the National Director. The Director attempted to provide the needed guidance in granting I-S deferments when he issued Selective Service Regulation No. 1622.15(b).[17] This regulation, perhaps in an attempt to put the statutory command of paragraph 6(h)(1) in non-legal language, excepted from I-S eligibility any person "who has been deferred as a student in Class II-S and has received his baccalaureate degree." 32 C.F.R. § 1622.15(b)(2).

Class II-S, however, is an overly broad term if unqualified, covering both graduate and undergraduate deferments and including deferments whether granted under the 1967 Act or prior law. Appellant's local board obviously saw that appellant had received a II-S classification at some time in his life and that he presently had a baccalaureate degree. Absent finer distinctions, appellant therefore fell squarely within an exception to I-S eligibility. But as we have shown, in order to be accurate the regulation should have limited the effect of the exception to students who have received an undergraduate deferment under paragraph 6(h)(1) of the 1967 Act, meaning any pre-baccalaureate student who has been deferred after July, 1967.

■ General Hershey attempted to clarify Selective Service Regulation No. 1622.15(b)(2) with Local Board Memorandum No. 87:

"Section 1622.15(b)(2) of the Selective Service Regulations refers to a registrant who has been placed in Class II-S after June 30, 1967, and has a baccalaureate degree."

The memorandum correctly states that a registrant must be classified II-S under the 1967 Act rather than under prior law, but again fails to limit the regulation to *undergraduate* II-S deferments awarded under paragraph 6(h)(1). Appellant suggests that Local Board Memorandum No. 87 would be a proper interpretation of the statute if two words were inserted:

"Section 1622.15(b)(2) of the Selective Service Regulations refers to a registrant who has been placed in Class II-S after June 30, 1967, and has *thereafter received* a baccalaureate degree."[18]

This or equivalent language might be acceptable for a clarifying memorandum. A more exact revision of the regulation, perhaps, would simply note that no person will be eligible to be placed in Class I-S who has received, after June 30, 1967, a mandatory undergraduate deferment

---

17. Selective Service Regulation No. 1622.15(b) provides:

"(b) In Class I-S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning; and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I-S under the provisions of this paragraph

(1) who has previously been placed in Class I-S thereunder or

(2) who has been deferred as a student in Class II-S and has received his baccalaureate degree.

A registrant who is placed in Clsss I-S under the provision of this paragraph shall be retained in Class I-S

(1) until the end of his academic year or

(2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier."

32 C.F.R. § 1622.15(b).

18. This is the manner in which the Second Circuit has chosen to read Local Board Memorandum No. 87. See Marsano v. Laird, 412 F.2d 65, 69 (2d Cir. 1969); Carey v. Local Board No. 2, 297 F. Supp. 252 (D.Conn.1969), affirmed, 412 F.2d 71 (2d Cir. 1969).

under paragraph 6(h)(1) of the 1967 Act. Appellant, never having received such a deferment, is not excluded by the fourth sentence of paragraph 6(h)(1) from the deferment mandated by subsection 6(i). But because his local draft board properly relied upon the advice of the Director and his legal staff, and because that advice, embodied in Selective Service Regulation No. 1622.15(b) and Local Board Memorandum No. 87, is contrary to the terms and policies of the Act, appellant was unlawfully denied a deferment to which he is entitled.

D. *The Appellant Qualified for a I-S Deferment Under Paragraph 6(i) (2).*

We conclude that appellant qualified under the general rule of paragraph 6(i)(2) for a I-S deferment until the end of the academic year. He was not precluded from invoking the protection of Class I-S when he received his induction order since he did not come within any of the four exceptions to paragraph 6(i)(2). We are bolstered in this conclusion not only by the language of the statute but also by the policies sought to be served by the I-S classification.

As we have noted, the undergraduate II-S classification is mandatory under paragraph 6(h)(1) of the 1967 Act. Neither a graduate II-S deferment nor a I-S classification is available to any person who has been deferred under paragraph 6(h)(1) of that Act. But the right to classification as I-S remains unqualified for those in graduate school who have never received the mandatory undergraduate II-S deferment available only after passage of the Military Selective Service Act of 1967—chiefly today's second and subsequent year graduate students. This Congressional provision was by no means unintentional. The Congress that enacted the 1967 statute sought to preserve the right of such students to classification as I-S. Congress intended thereby to provide interim relief during the transitional period between the termination of the old scheme of discretion-ary deferments and the complete implementation of the new system of mandatory undergraduate deferments accompanied by substantial penalties.

Appellant, as a member of this small transitional group, did require and it was intended by Congress that he receive continuing protection against a disrupted academic year. He was not under advance warning that he would begin his graduate school career at his own risk. And having completed this one year of allowable graduate deferment, he could not realistically be expected to wait idly for an order of induction. Rather, he began his second year and sought relief until the end of the year when the induction order finally came. This delay, of course, could not be repeated in order to gain a deferment for a third and fourth year, since he would be disqualified from obtaining a second I-S deferment by the very terms of paragraph 6(i)(2).

As we have previously noted, the construction which we give to paragraph 6(i)(2) may prescribe only a limited coverage for Class I-S. The effect of the I-S classification will diminish as years pass, since most persons entering graduate school in the fall of 1968 or thereafter will have had undergraduate II-S deferments under the 1967 Act and will thus be ineligible under paragraph 6(h)(1) for a I-S deferment while in graduate school. However, we refuse to lower the I-S classification into an early grave by giving it virtually no present coverage.

The conclusion which we have reached on the merits of appellant's claim also resolves the issue of our jurisdiction to grant pre-induction review. Since we hold that appellant has a mandatory right to a I-S classification which has been denied him by appellees in clear violation of the statute, it follows that appellees must grant the relief requested in spite of Section 10(b) (3) of the Act. Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

In reaching this result, we have passed temporarily the fact that appellant's com-

plaint was dismissed for lack of venue and on grounds of mootness. We turn now to these questions and conclude that these grounds for dismissal were also erroneous.

## IV. VENUE

Appellees argued in the District Court and the district judge agreed that the case should be dismissed for want of proper venue in the District of Columbia. The argument was that General Hershey was not a party against whom a claim for relief could be stated and that, since the remaining defendants did not reside in the District of Columbia, there was no jurisdiction here to adjudicate claims against them.

We cannot agree with the government's contention that General Hershey is not a proper defendant upon the premise that he cannot grant the relief which appellant seeks. Although it is true that the Director of the Selective Service System does not take part in the day-to-day activities of local boards, his directives guide their decisions in order to provide uniformity in the administration of the Selective Service laws. In this regard he has considerable power to direct the classification or reclassification of registrants,[19] to appeal a local board decision,[20] and to require the reopening and reconsideration of a registrant's classification.[21] The Director's power to guide local board decisions is particularly important in the present controversy since the erroneous guidance of Selective Service Regulation No. 1622.15(b) and of Local Board Memorandum No. 87, as

we have indicated, was responsible for the misinterpretation of paragraph 6(h) (1) of the Act which has deprived appellant of the classification to which he is entitled. It cannot be doubted as a practical matter that appellant's local draft board, although theoretically autonomous, heeded the regulation and memorandum issued by General Hershey in determining that appellant was not entitled to a I-S classification. As this Court has previously noted, "It matters little whether his [General Hershey's] directive is a 'rule,' an 'order,' a set of 'instructions,' or only a sui generis 'directive.' Whatever it is in law, it purports to be an authoritative declaration of policy issued for the guidance of the System's line officers." National Student Association, Inc., v. Hershey, 134 U.S.App.D.C. 56, 68, 412 F.2d 1103, 1115 (1969). We therefore conclude that General Hershey is a proper party to this suit. We find further that as a public official he "resides" in the District of Columbia,[22] and from this it follows that venue, at least as to General Hershey, properly lies in the District of Columbia under the general federal venue statute, as amended. That statute provides, in pertinent part:

"A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides * * *"

28 U.S.C. § 1391(e) (1964).

19. 32 C.F.R. § 1622.60.

20. 32 C.F.R. § 1626.1.

21. 32 C.F.R. § 1625.3.

22. "Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties." 1 J. W. Moore, Federal Practice ¶ 0.-142 [5.–2] (1964). See also Stroud v. Benson, 254 F.2d 448 (4th Cir.), cert. den., 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.

2d 59 (1958) (Secretary of Agriculture resides in District of Columbia); Ernst v. Secretary of Interior, 244 F.2d 344, 17 Alaska 133 (9th Cir. 1957) (Secretary of Interior and Solicitor of Department of Interior reside in District of Columbia); Trueman Fertilizer Co. v. Larson, 196 F.2d 910 (5th Cir. 1952) (General Services Administrator resides in District of Columbia); Podovinnikoff v. Miller, 179 F.2d 937 (3d Cir. 1950) (Commissioner of Immigration resides in District of Columbia).

■ Since our District Court is a proper forum for the case against General Hershey by virtue of the general federal venue statute, the other defendents are also properly in court here if personal jurisdiction was obtained over them. Section 1391(e) requires only that once it is determined that "*each* defendant is an officer or employee of the United States or any agency thereof acting in his official capacity," then venue is proper in any judicial district in which "*a* defendant * * * resides." 28 U.S.C. § 1391 (e) (1964) (Emphasis added). Personal jurisdiction over the nonresident appellees from Missouri and Maryland was established when without objecting they entered a general appearance through the United States Attorney. Fed.R.Civ. P. 12(h). Appellant was therefore entitled to proceed against them in the United States District Court for the District of Columbia. The appropriateness of the District of Columbia forum might also be sustained under 11 D.C.Code § 521 (1967). Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 237, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Pang-Tsu Mow v. Republic of China, 91 U.S.App.D.C. 324, 327, 201 F.2d 195, 198 (1952), cert. den., 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953).

■ The conclusion that the District of Columbia is an appropriate forum in this case in no way intimates a view as to how draft cases should be apportioned throughout the country. We hold only that when a registrant is affected and aggrieved by an unwarranted interpretation of an applicable statute by the Di-rector of the Selective Service System, he may properly seek relief at the seat of government. Examples of judicial review of agency decisions in the District Court for the District of Columbia are legion, simply because this is the seat of government and the agencies have their headquarters here. When the issues raised by an appellant turn upon a general instruction by the Director, the District of Columbia is at least a proper although not an exclusive forum for resolving the matter in controversy. Where the role of the Director is not so immediate and direct as it is in the instant case, our District Court may properly determine that the controversy has no strong ties to this jurisdiction and, invoking the principle of *forum non conveniens* embodied in 28 U.S.C. § 1404(a) (1964), transfer the action to a more appropriate forum. See Young v. Director of Prisons, 125 U.S.App.D.C. 105, 367 F.2d 331 (1966).[23]

■ We conclude, then, that the Director of the Selective Service System is a proper party defendant when the controversy directly challenges a general instruction issued by him as guidance to local boards, and applied by a board, in the classification of registrants. Further, we conclude that a registrant may proceed against his local board by a suit filed in the District of Columbia unless the board makes timely objection to personal jurisdiction and persuades the District Court that the board has contacts with this forum too insubstantial to support personal jurisdiction.[24]

23. This was the course taken by Judge Corcoran in Thomas v. Hershey (D.D.C. July 15, 1969). Plaintiff who was registered and domiciled in Maryland brought suit solely against General Hershey in the District of Columbia in order to obtain a I–S classification. Judge Corcoran did not dismiss the action, but transferred the case to Maryland under 28 U.S.C. § 1404(a) (1964) or, in the alternative, under 28 U.S.C. § 1406(a) (1964).

24. The government at the argument on the motion to stay the induction relied upon Becker v. Hershey, 309 F.Supp. 487, 2 SSLR 3191 (D.Conn. Feb. 13, 1969), for the proposition that General Hershey is an improper party to the suit. But the main concern in the *Becker* case was the appropriateness of a declaratory judgment which would amount to an abstract advisory opinion in a forum where plaintiffs had not even attempted to join their own local boards. The case of Sorenson v. Selective Service System, 203 F.Supp. 786 (E.D.Pa.1962), also relied upon by appellees, actually supports appellant's position. In that case plaintiff,

## V. MOOTNESS

The District Court, in its order of dismissal of July 16, 1969, found the controversy moot since the academic year for which appellant claims a I-S deferment ended in June of 1969. The court apparently equated the statutory language of paragraph 6(i) (2), which allows deferment until the end of the "academic year," with the date of the end of the spring semester at the University of Maryland.[25] Appellant argues, however, that his academic year did not end in June at the end of the spring semester, since he is engaged in a course of study which continues over the summer months and which culminates in his comprehensive doctoral preliminary examinations in September.[26] He argues further that since paragraph 6(i) (2) fails to define "academic year", we should adopt the definition of that term found in Selective Service Regulation No. 1622.25(b), which

defines "academic year" as "the 12-month period following the beginning of his course of study." 32 C.F.R. § 1622.25(b). Recognizing that the regulation on its face applies only to Class II-S deferments, he nevertheless argues that absent another definition of "academic year" elsewhere in the regulations or statute, sound principles of statutory construction require that we adopt the Class II-S definition for Class I-S purposes.[27] We do not reach these questions, however, for there are reasons more compelling than those of definition for holding that this controversy is not moot.[28]

Having concluded that appellant had an unequivocal *right* to a I-S deferment, it follows that his local draft board could not deny him that right and instead merely postpone his induction if a postponement would not accomplish the same purpose as would the deferment to which he had a clear right. There is no doubt that

an Iowa registrant, brought suit in Pennsylvania where his induction had been transferred. The court found that the transfer board was acting in a ministerial capacity alone and dismissed for want of venue. 28 U.S.C. § 1391(b) (1964). However, the court seemed to assume that venue would have been proper in Iowa or in the District of Columbia. 203 F. Supp. at 792.

25. This is also the view of the Seventh Circuit, which recently has said: "The ordinary meaning of 'academic year' is given in Webster's Third New International Dictionary as follows: 'the annual period of sessions of an educational institution usu. beginning in September, and ending in June—called also *school year*.'" Robinson v. Hershey, 2 SSLR 3191 (7th Cir. July 14, 1969).

26. This fact apparently was alleged for the first time when appellant's motion for stay of induction was argued before this Court on August 1, 1969. There is nothing in the district judge's order or findings of fact and conclusions of law, or in the record before the District Court that indicates that this factual allegation was raised below.

27. This is also the view of the Eighth Circuit, which applied the definition of academic year found in Selective Service Regulation No. 1622.25(b) to a registrant seeking a I-S deferment. United

State v. Rundle, 413 F.2d 329, 333 (8th Cir. 1969).

28. Were we required to decide the issue of when appellant's academic year came to an end, we would be unable to do so on the record before us. Appellant's complaint failed to include any allegation in reference to this specific fact, and the precise date of termination of the academic year was not focused on in the District Court. The only information in the record is a letter from the University of Maryland requesting "postponement" of induction "until the end of the present semester which will be June 7." We need only note here that were we forced to decide the issue and were the facts sufficiently developed to allow us to do so, we would not be disposed to superimpose the twelve-month definition of academic year which is applied to II–S deferments upon the I–S classification. See 32 C.F.R. § 1622.25(b). There are fundamental distinctions between the two which militate against reading Selective Service Regulation No. 1622.25(b) into paragraph 6(i) (2) of the Act. Rather, we would be inclined to apply a flexible concept of "academic year" based upon the circumstances of the particular case and aimed at effectuating the essential purpose of the I–S deferment to avoid the hardship and waste involved in the interruption of an academic year once begun.

the prime purpose of the I-S classification is to permit the completion of the academic year, a purpose arguably effectuated as well by postponement as by deferment. But this does not compel the conclusion that a registrant who has effectively postponed his induction through litigation is not to be granted a I-S deferment, for there are many collateral rights which attach to the granting of a deferment which are lost if induction is only postponed. It was with these rights in mind that Congress in 1951 changed Section 6(i) (2), which only postponed induction until the end of the academic year, so as to provide actual deferment.[29]

An important collateral right inherent in the I-S classification and the resulting deferment is the registrant's right to have his classification reopened upon the presentation of new facts. And, "[t]he reopening and reconsideration of a classification have significance independent of the reclassification itself." United States v. Rundle, 413 F.2d 329, 332 (8th Cir. 1969). Under Selective Service Regulation No. 1625.2, the local board may reopen a registrant's classification if it is presented with facts not considered when the registrant was classified and which would justify a change in classifi-

cation. 32 C.F.R. § 1625.2. But if the registrant has not been deferred by a I-S classification, and there is an outstanding induction order, the operation of which has merely been postponed, the board may reopen only if such facts represent a change in the registrant's status "resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2. Thus a registrant who was improperly denied a I-S classification or whose appeal was dismissed as moot would essentially lose his right to a II-A occupational deferment since the board could find that the obtaining of the employment was not beyond his control. Similarly, entering medical school could be deemed by the local board to be an act within the registrant's control so that eligibility for a graduate II-S could depend upon whether there was an outstanding induction order.[30] Furthermore, Congress made the change from postponement to deferment in 1951, and reaffirmed it in the 1967 Act, primarily to provide students with "an opportunity to enlist in a branch of service of their choice during such deferment period." H.R.Rep.No 271, 82d Cong., 1st Sess., 2 U.S. Code Cong. & Admin.Serv. 1472, 1500 (1951).[31] The purpose of this leg-

---

29. Compare Selective Service Act of 1948, Ch. 625, § 6(i) (2), 62 Stat. 612 (1948) with Universal Military Training and Service Act of 1951, Ch. 144, § 6(i) (2), 65 Stat. 85 (1951). See H.R.Rep. No. 271, 82d Cong., 1st Sess., 2 U.S.Code Cong. & Admin.Serv. 1472, 1500 (1951).

30. These problems were recognized and well analyzed by District Judge Robson in Weppler v. Hershey, 308 F.Supp. 447 (N.D.Ill.1969) :

"The defendants argue, however, that since this plaintiff has had his induction stayed until after August 31, 1969, that the need for a I-S has evaporated and the plaintiff will not be injured by what might even be conceded to be an illegal act of the Local Board, since the requested I-S would run out on June 8, 1969, the date of plaintiff's graduation. But the plaintiff does stand to be injured so long as the induction order remains outstanding. The plaintiff could not, if he so chose, fulfill his

military obligation with a Reserve unit of the armed forces or the National Guard. 32 C.F.R. § 1622.13(f) (1). In addition, with an induction order outstanding, the Local Board can only reopen the registrant's classification to grant a I-S where the registrant's status has changed due to circumstances beyond his control. 32 C.F.R. § 1625.2 and § 1625.3. The plaintiff points out that this would prevent him from obtaining a job which might or could entitle him to an occupational deferment, since such an occurrence is not beyond the registrant's control."

308 F.Supp. at 448. See also United States v. Rundle, 413 F.2d 329 (8th Cir. 1969).

31. If an induction order is only postponed and not cancelled by the granting of a deferment, the registrant will be precluded under subsection 15(d) of the Act from enlisting in any branch of the Armed Forces, 50 U.S.C.App. § 465(d) (1964). Although under Operations Bulletin No.

islative change will be frustrated if this case is held to be moot.

The second important collateral right which attaches to a I-S deferment is the right of reclassification as I-A upon expiration of the I-S deferment and before an induction order can be issued. This procedure, of course, affords the registrant the concomitant rights of personal appearance and appeal to the state appeal board and possibly to the Presidential Appeal Board. See 32 C.F.R. §§ 1624–1627.[32] "These are substantial rights and the board's procedure in this instance by depriving the appellant of them, was a denial of due process * * *" United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954).[33]

Appellees' argument that the appeal is moot rests primarily on two cases recently decided by other circuits, Armendariz v. Hershey, 413 F.2d 1006 (5th Cir. 1969), and Robinson v. Hershey, 2 SSLR 3191 (7th Cir. July 14, 1969), rehearing den., 2 SSLR 3191 (7th Cir. July 29, 1969). We reject the contention that either case is dispositive of the question of mootness. The question of mootness in the *Armendariz* case was decided on the basis of a stipulation between the parties filed in the District Court that "[t]he academic year at the University of Texas School of Law will not terminate until June of 1969." In dismissing the appeal as moot "[p]ursuant to the stipulation of the parties of which we take cog-

nizance," the Fifth Circuit in its June 13, 1969, opinion allowed the judgment of the District Court in favor of the registrant to stand. 413 F.2d at 1008. It appears that the registrant's procedural rights were either unaffected by the court's dismissal or were never urged upon the court by the registrant. There is no indication that the court considered anything more than the obvious fact that the academic year was over and that the registrant had not yet been inducted. Our case is quite different. We have no stipulation before us, and the issue of mootness is vigorously contested by appellant who clearly asserts his procedural rights.

This case is more closely akin to the other case relied on by appellees, Robinson v. Hershey, 2 SSLR 3191 (7th Cir. July 14, 1969), rehearing den., 2 SSLR 3191 (7th Cir. July 29, 1969). There the registrant argued in his motion for rehearing that he had been deprived of important rights collateral to his right to a I-S deferment and "that certain avenues are available to a person deferred which are not open to one whose induction is merely postponed." 2 SSLR at 3191. However, the court denied the motion for rehearing, because "[t]here is no showing that he [the registrant] would have followed any of those avenues, and the time has now expired." 2 SSLR at 3191. From this it seems that the Seventh Circuit has taken the view that although the right to have a classification reopened

287, it is possible to obtain a cancellation of an induction order upon acceptance in an enlistment program, the registrant, because he must act before his actual induction date, would normally have approximately twenty-one days to accomplish this feat. On the other hand, if a I-S is granted, there is more time available for enlistment since the local board must reclassify the registrant I-A, which is appealable, before sending him an induction order.

32. In addition to this right to automatically be reclassified I-A upon the expiration of a I-S deferment, the registrant has the additional right to seek reclassification in a class other than I-A by demonstrating his entitlement to a different classification. This reclassification might be

sought under the regulations on any one of a number of grounds, including for example, the possibility of reclassification because the registrant has been offered a position important to the national defense, perhaps one giving the nation the benefit of his technical education. And if the local board denies any requested deferment or exemption, the registrant can once again request a personal appearance and can appeal his I-A classification to the state appeal board and possibly to the Presidential Appeal Board.

33. See also United States v. Rundle, 413 F.2d 329 (8th Cir. 1969); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967).

and the right to a reclassification upon the expiration of a I-S deferment (and the concomitant appeal rights) are valuable rights, the registrant is not entitled to a stay of his induction pending appeal unless he shows that he would have taken advantage of these rights. We cannot agree. Rather, we find compelling the reasoning of the Eighth Circuit in United States v. Rundle, 413 F.2d 329 (8th Cir. 1969):

"Denial of procedural and substantive rights cannot be justified by subsequent events. Cf. United States v. Freeman, 388 F.2d 246, 250 (7 Cir. 1967). Had these rights—the reopening of his classification and the attendant cancellation of his induction order—been afforded the registrant, no one can predict what subsequent events might have turned out to be. However, we need not theorize about such possible events, for as stated in United States v. Simmons, 348 U.S. 397 at 406, 75 S.Ct. 397 at 402, 99 L.Ed. 453.

'Petitioner has been deprived of * * * a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation.'"

413 F.2d at 334.

We reject the view that in a case such as the one before us there must be a showing that the registrant would have followed the avenues available to a person deferred which are not open to one whose induction is only postponed. It is likewise impossible for us to say with certainty whether "the time has now expired" that would have been required for appellant to exercise all the avenues

available to him had he received the classification which the statute mandates at the time he was entitled to receive it. Appellant requested a I-S classification on April 29, 1969. Had he been granted that classification, it would have lasted until the end of his academic year, at which time he would have been reclassified I-A.[34] His rights of personal appearance and appeal would have immediately come into existence again at that time. Accordingly, we do not accept appellees' contention that we should dismiss the appeal as moot.

## VI. SUMMARY

By way of summary, we find that this Court has subject matter jurisdiction under Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). General Hershey is a proper party because the present action involves directives issued by him regarding the classification of registrants, and venue properly lies in the District of Columbia. Appellant is entitled to a I-S classification until the end of the academic year which commenced in the fall of 1968 [35] under the unequivocal statutory mandate of paragraph 6 (i) (2) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(i) (2) (1964); he does not fall within any of the four exceptions to Class I-S eligibility listed in paragraphs 6(i) (2) and 6 (h) (1) of that Act, 50 U.S.C. App. §§ 456(i) (2), 456(h) (1) (1964 & Supp IV, 1965–1968). Finally, the controversy is not moot because appellant is entitled to the important procedural rights of reopening and reclassification incident to the deferment procedure.

The judgment of the District Court is therefore reversed, with instructions

---

34. As stated in Note 28, we do not decide when appellant's academic year ended; this is a determination to be made by appellant's local draft board. It may well be that appellant's local board may reopen appellant's classification and declare him I–A immediately after granting the I–S deferment required by this opinion. Upon a determination of when appellant's academic year ends, this would be within the board's prerogative; yet the important procedural rights to which appellant is entitled, and which have heretofore been denied by the board's action in merely postponing induction, would be triggered by this action.

35. See Notes 28 and 34.

 

that an order in the nature of mandamus shall issue directing that appellant be reclassified in Class I-S as of April 29, 1969, the date on which he requested such deferment and was entitled thereto.

Reversed and remanded for proceedings consistent with this opinion.