Carlos **MARCELLO**, Appellant,

v.

The **ATTORNEY GENERAL OF the UNITED STATES.**

No. 72-2169.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1973.

Decided Feb. 14, 1974.

Rehearing Denied Feb. 27, 1974.

Jack Wasserman, Washington, D. C., with whom Benjámin M. Parker, Washington, D. C., was on the brief, for appellant.

Paul C. Vincent, Atty., Office of Gen. Counsel, Immigration and Naturalization Service, with whom Harold H. Titus, Jr., U. S. Atty., was on the brief for appellee. George W. Masterson, Jr., Atty., Dept. of Justice, also entered an appearance for appellee.

Before McGOWAN, TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case is before the court on appeal from a ruling of the District Court granting summary judgment to the Government and dismissing on the merits a complaint which sought a declaratory judgment that the Attorney General had exceeded his discretionary authority by requesting the plaintiff to complete an application for an Italian passport. We remand with instructions to dismiss the

complaint for lack of jurisdiction of the subject matter.

## I.

An order of deportation of the plaintiff, entered by the Immigration and Naturalization Service (INS) in 1961 but not executed, has been challenged by the plaintiff in numerous administrative and judicial proceedings. In the last judicial action preceding the instant litigation, the Court of Appeals for the Fifth Circuit held, on October 5, 1971, that plaintiff's challenge in that case was mooted by his ability to apply to INS for a suspension of deportation pursuant to 8 U.S.C. § 1254, plaintiff having then completed the ten-year period of residence in the United States required by 8 U.S.C. § 1254(a)(2). Marcello v. INS, 449 F.2d 349 (5th Cir. 1971).

On October 7, 1971, the plaintiff petitioned INS to reopen his deportation proceeding to allow him to apply for a suspension, and this request was granted on February 4, 1972. Previously, on January 21, 1972, District Director of INS Troy Adams, Jr., at New Orleans, wrote a letter to plaintiff which called attention to the statutory obligation of one under a final order of deportation to "make timely application in good faith for travel or other documents necessary to his departure," 8 U.S.C. § 1252(e), and requested the plaintiff to appear at INS offices to execute an application for an Italian passport. The District Director acknowledged his awareness of plaintiff's application to reopen the 1961 deportation proceedings; and stated that no effort would be made to deport the plaintiff if proceedings were in fact re-opened to consider a suspension. The Director advised, however, that "in the light of the long delays that have already occurred in your case," an application for travel documents should go forward so that the INS "will be in a position to execute the deportation order promptly, when it can legally do so."

The plaintiff has declined to execute any passport application. He asserts that he could not truthfully make certain representations required in the application and contends that the District Director lacks authority to request plaintiff's execution of the application in view of the pending application to reopen the 1961 proceedings. The District Director found these objections without merit and renewed the request. This litigation followed.

The District Court dismissed plaintiff's complaint on the merits, holding that the request to execute the passport application was within the discretion conferred by 8 U.S.C. § 1103, which charges the Attorney General with the administration and enforcement of the immigration laws. The District Court held that 8 U.S.C. § 1252(e) [1] was intended to permit the Attorney General to take reasonable steps to deport undesirable aliens, and that the letter of January 21, 1972, was a reasonable action implementing that function. Marcello v. Attorney General, 347 F.Supp. 898, 902 (D.D.C.1972).

## II.

In our view, the District Court should have dismissed plaintiff's complaint for lack of jurisdiction of the sub-

---

[1]. 8 U.S.C. § 1252(e) provides, in pertinent part:

"Penalty for willful failure to depart; suspension of sentence

Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in paragraphs (4) to (7), (11), (12), (14) to (17), or (18) of section 1251(a) of this title, who shall willfully fail or refuse to depart from the United States within a period of six months from the date of the final order of deportation under administrative processes, or, if judicial review is had, then from the date of the final order of the court, . . . or shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, . . . or who shall willfully fail or refuse to present himself for deportation at the time and place required by the Attorney General pursuant to such order of deportation, shall upon conviction be guilty of a felony. . . ."

ject matter.[2] The Immigration and Nationality Act does not provide for judicial review of a Government request that the alien apply for travel documents. The absence of such a provision stands in contrast to the scheme for judicial review of deportation orders set forth in 8 U.S.C. § 1105a.

■ The alien can assert the infirmity of the administrative request as his reason for failure to comply with it in presenting his defense in any prosecution brought pursuant to § 1252(e), which limits its penalties to anyone who willfully fails to make timely application in good faith. The enforcement pattern contemplated by this section provides reasonable protection for the plaintiff. The Government may not seek an indictment. The grand jury may not indict. If there is an indictment the alien may assert his objections to the request as a defense, raising reasonable doubt as to whether he did "willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure." [3]

Insofar as the issues concerning the request to execute travel documents relate to the validity of the deportation process, as in the case before us, there is added basis to negative district court

jurisdiction. Congress has provided for judicial review of "final orders of deportation" exclusively in the courts of appeals. 8 U.S.C. § 1105a(a).[4] A "final order" has been construed to include the denial of an application for suspension of deportation, Foti v. INS, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963),[5] and denial of a motion to reopen deportation proceedings, Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1968). In construing the judicial review provisions, the Supreme Court has viewed the Congressional purpose as one of expediting deportation by removing the opportunity for initial review in the district courts. Foti v. INS, *supra*, 375 U.S. at 226, 85 S.Ct. 156, 13 L.Ed.2d 90.

■ In view of these features of the Immigration and Nationality Act, we conclude that the District Court lacks jurisdiction under the Administrative Procedure Act to review the administrative request for the purpose of considering a prayer that it be enjoined or declared invalid. We think it plain that Congress intended that the district courts would not be brought into the deportation process at this juncture, and we can not fairly impute to Congress an intent to restore, under the general provisions of the APA, the district court intervention precluded by the specific

---

2. The lack of subject matter jurisdiction is properly noticed by this court on its own motion. Floersheim v. Engman, 161 U.S. App.D.C. 30, 494 F.2d 949, 952, n. 1 (1973).

3. We note that the INS has expressed its willingness to allow plaintiff to complete the Italian passport application without making the representations to which he has objected.

4. 8 U.S.C. § 1105a(a) provides, in part:
   § 1105a. Judicial review of orders of deportation and exclusion—Exclusiveness of procedure
   (a) The procedure prescribed by, and all the provisions of sections 1031 to 1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under sec-

tion 1252(b) of this title or comparable provisions of any prior Act, except that—
   *       *       *       *       *
   (2) the venue of any petition for review under this section shall be in the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted in whole or in part, or in the judicial circuit wherein is the residence, as defined in this chapter, of the petitioner, but not in more than one circuit;
   *       *       *       *       *

5 U.S.C. § 1032, 64 Stat. 1129, incorporated by reference (and replaced in 1966 by 28 U.S.C. § 2342) provides for exclusive jurisdiction of the court of appeals.

5. The Fifth Circuit's 1971 ruling plainly contemplates that any infirmity in the 1961 order then properly before the court would be included in the errors assignable in the event of denial of suspension of deportation.

provisions on judicial review contained in the Immigration and Nationality Act.

Our conclusion that jurisdiction is lacking is reinforced by considerations of venue, although questions of jurisdiction and venue are distinct. Venue of a petition to review a deportation order lies in the circuit in which administrative proceedings were conducted or in the circuit which includes the plaintiff's residence. 8 U.S.C. § 1105a. Thus review of the plaintiff's deportation order would not be available in this circuit, a point we note because an alien's claim to review administrative action taken pursuant to § 2512(e) may well present issues closely related to those which have been raised, or could be presented, in a challenge to a final order of deportation.

Jurisdiction under the APA, however, is ordinarily complemented by the broad venue provisions of the Mandamus and Venue Act of 1962.[6] Without ruling on these venue provisions directly, we are aware of actions in equity or under the APA, brought against an officer whose official residence is in the District of Columbia, on the ground that the crucial action was taken in this District and is national in scope and application. *See* Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969). We are loath to permit the centralization of actions in this District, however, where dispersal is more appropriate and within the expressed or reasonably implied will of Congress. Smith v. Katzenbach, 122 U. S.App.D.C. 113, 351 F.2d 810 (1965).

Our ruling that the District Court lacks jurisdiction under the APA is in line with our recent decision in Floersheim v. Engman, *supra*, note 2, in which we held that the APA did not authorize intervention by the district court in the interpretation of an FTC order, the validity of which was reviewable in the court of appeals under the FTC Act.

The case is remanded to the District Court with instructions to dismiss the complaint for lack of jurisdiction.

So ordered.

---

6. The Act is codified at 28 U.S.C. § 1361 et seq. 28 U.S.C. § 1391(e) provides for venue in any judicial district in which the defendant resides, in which the cause of action arose, in which real property involved in the action is located, or in which the plaintiff resides, if real property is not involved. On the interrelation of APA jurisdiction and the Mandamus and Venue Act, see Peoples v. Department of Agriculture, 138 U.S.App. D.C. 291, 294–295, 427 F.2d 561, 564–565 (1970).