Ex parte GREEN.

No. 104.

Circuit Court of Appeals, Second Circuit.

Nov. 24, 1941.

Wilfred E. Hoffmann, of Syracuse, N. Y., for appellant.

Ralph L. Emmons, U. S. Atty., of Binghamton, and Robert J. Leamy, Asst. U. S. Atty., of Oneonta, N. Y., for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This case presents the question of whether a member of the Six Nations of Indians is subject to the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq.

The appellant is an Onondaga Indian, a member of a tribe which is part of the Six Nations of Indians, or Iroquois Confederacy. In accordance with the provisions of the Selective Service Act, he presented himself for registration before a local draft board. After filing his questionnaire, he was placed in classification 1A, as fit for immediate military training and service. He took no appeal from this classification. On April 26, 1941, he was ordered by his local draft board to the Syracuse Induction Station, where, after a physical examination, he was inducted into the United States Army and required to take an oath of allegiance.

■ His mother thereupon petitioned the District Court for the Northern District of New York for a writ of habeas corpus directed to Major D. W. McLaren, who was holding Green at the Syracuse Induction Station. Upon a motion for dismissal of the writ, the Court denied the motion for the discharge of Green from military custody. This appeal was thereupon taken. Although the record was filed late, the importance of the case impels us, as we indicated at the argument, to extend nunc pro tunc the time for filing the record until September 25, 1941.

Green's argument, briefly stated, is that he is not a citizen within the meaning of § 303(a) of the Selective Service Act, 50 U.S.C.A. Appendix, § 303(a), and that the attempt of Congress to confer citizenship upon Indians by the Citizenship Act of 1924, 43 Stat. 253, 8 U.S.C.A. § 3, and by the Nationality Act of 1940, 54 Stat. 1137, 1138, 8 U.S.C.A. § 501 et seq., was unconstitutional because in violation of the treaty rights of the Six Nations. He

points out that the Six Nations, unlike many of the other American Indians, were never conquered by the United States; rather, he urges, their relation to the United States is that of an independent nation by virtue of the treaties concluded at Fort Stanwix on October 22, 1784, at Fort Harmar on January 9, 1789, and at Canandaigua on November 11, 1794. Green argues that the sovereignty acknowledged by these treaties has been preserved by the Onondagan tribe, which continues to live on tribal land and to exercise its traditional method of self-government.

■ At the outset, the government asserts that Green should have appealed from the draft board's action, in the manner prescribed by the regulations issued pursuant to § 310(a) (2) of the Act, rather than to proceed by writ of habeas corpus.[1] But if Green's contentions as to the merits are sound, there was a complete lack of jurisdiction over his person under the Selective Draft Act, just as though an Ambassador of a friendly state were being held in military custody. Even though Green's failure to claim exemption before his local draft board and to appeal from its decision might be enough to justify the district court's dismissal of his writ of habeas corpus, we are not inclined to dispose of the case on so narrow a ground, for the important question he presents is certain to arise with respect to other members of his tribe, if not decided on this appeal.

■ Passing to the merits of the case, we find ourselves compelled to decide against Green, although, because of the historic relations of the United States to the Indians, we reach that conclusion most reluctantly. Assuming, arguendo, the validity of his argument as to the treaty status of the Indian tribe to which he belongs, and that the statutes of 1924 and 1940 are at variance with that status, yet those statutes are not, on that account, unconstitutional. Where a domestic law conflicts with an earlier treaty, that the statute must be honored by the domestic courts has been well established at least since the Head Money Cases, 1884, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798. We agree that, in the light of the history of the dealings between the United States and Green's tribe, those statutes should be con-

---

[1] Cf., for the practice under the Selective Draft Act of 1917, 50 U.S.C.A. § 201; Napore v. Rowe, 9 Cir., 256 F. 832, and Ex parte Tinkoff, D.C., 254 F. 222, and cases there cited.

strued most favorably to him. But we have taxed our ingenuity in vain to find any interpretation which would result in a decision in his favor. Whatever doubt there might possibly be concerning the 1924 statute, because of its title,[2] the 1940 statute unequivocally made Green a citizen. The provision in that Act that "the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property," rather hurts than helps Green's case; for Congress, by expressly excepting property rights, emphasized its intention to impose all other obligations of citizenship. Accordingly, since the subsequently enacted Selective Service Act included "every male citizen" within its terms, 50 U.S.C.A. Appendix, § 303(a), it is impossible to reach any conclusion other than that Congress intended not to except such persons as Green. The provision in § 304(b) of the Act for quotas, in which reference is made to "the several States, Territories, and the District of Columbia," was intended merely to determine such quotas, and cannot reasonably be said to imply that, for the purpose of determining the persons subject to the Act, those living on Indian reservations should be excluded.

The order is affirmed.

---

[2] "An act to authorize the Secretary of the Interior to issue certificates of citizenship to Indians." See Senate Report No. 441 and House Report No. 222, 68th Cong., 1st Sess.