**UNITED STATES of America, Plaintiff,**

v.

**John Edward CRAIG, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**Robert Gene ROSEBEAR, Defendant.**

**Nos. 4–71 Cr. 212, 4–72 Cr. 219.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 10, 1973.

Robert G. Renner, U. S. Atty. by Joseph T. Walbran, Asst. U. S. Atty., for plaintiff.

Larry B. Leventhal, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

Two defendants in entirely different criminal actions brought by the government, Robert Gene Rosebear, 4–72 Cr. 219 and John Edward Craig, 4–71 Cr. 212, are represented by the same counsel and simultaneously have filed motions which were argued together to dismiss, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, the government's indictments against them for their failure to submit to induction under the Selective Service Act in violation of 50 App.U.S.C. § 462. Defendants assert that they are members of the Indian race [1] and allege that the United

1. There is some question as to whether both defendants are legally members of the Indian race. S. William Craig, an expert on Indian affairs, testified that to be

States constitutionally cannot involuntarily compel their induction into the armed services. Their position proceeds from the premise that the Indian Nations possess "quasi-sovereignty" status which is preserved except to the extent it is specifically limited by treaty or acts of Congress. Defendants contend that the laws and treaties of the United States do not grant Indians full citizenship,[2] thereby making them immune from compulsory military service which extends only to citizens. See 50 App.U.S.C. § 454.[3] The defendants further maintain that various treaties between their tribes and the United States require them to be "peaceful" and "civilized",[4] duties which allegedly are inconsistent with participation in the armed services.

The defendants called several witnesses to testify in their behalf. Mr. Lawrence Nanticoke, Secretary of the Six Nations "Iroquois" Confederacy, testified as to the central role of peace in Indian life. S. William Craig, a former faculty member of the University of Minnesota's Department of Indian Studies and father of the defendant John Edward Craig, corroborated the significance of peace in the Indian way of life. He also offered his interpretation of several of the treaties in question and described ways in which he believes Indians are not accorded full citizenship in the United States. Harold Goggleye, an Indian and a Viet Nam veteran, attempted to describe some of the atrocities he witnessed in the Viet Nam war. The court limited testimony along this line, taking judicial notice of the fact that war generally is of a non-peaceful, uncivilized nature. Finally, both defendants testified to their belief in, and adherence to, the Indian way of life.

The government did not produce any witnesses but on oral argument relied exclusively on the three cases cited in its brief. Ex Parte Green, 123 F.2d 862 (2d Cir. 1941); Albany v. United States, 152 F.2d 266 (6th Cir. 1945); and Williams v. United States, 406 F.2d 704 (9th Cir. 1969), cert. denied, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 561 (1969). The government urges that these cases involve almost identical challenges to the Selective Service laws and that in each instance the same was rejected.

■ After hearing oral argument and examining the briefs presented by both parties and the statutes and cases cited therein, the court denies both defendants' motions to dismiss. The court finds that direct precedent clearly supports the government's position. Defendants have not presented any factual situation which would compel departing

considered an Indian by blood, one must be ¼ Indian and a member of a tribe subject to the jurisdiction of the Bureau of Indian Affairs. Robert Rosebear appears to be ¾ Chippewa and John Edward Craig ¼ Mohawk and ¼ Chippewa. S. William Craig states that the Mohawks are not under the jurisdiction of the Bureau of Indian Affairs, but the court has no record of the Chippewa's status. In any event, the distinction is not controlling here because, for purposes of this motion, the court assumes that both defendants are legally members of the Indian race.

2. See particularly the Citizenship Act of 1924, 8 U.S.C. § 3, and the Nationality Act of 1940, 8 U.S.C. § 501 et seq. The 1940 Act was re-enacted in its entirety in 1952, 8 U.S.C. § 1101 et seq.

3. Prior to 1971, the Selective Service Act covered all male citizens and male aliens admitted for permanent residence. The 1971 amendments to the statute, however, deleted the reference to aliens and substituted "every other male person residing in the United States." The court need not address itself to the import, if any, of this change inasmuch as the court finds that the defendants are citizens within the meaning of the Selective Service law.

4. See e. g., Treaty with the Chippewa 1855, 10 Stat. 1165; Treaty with the Chippewa et al. 1864, 13 Stat. 693. Defendants' brief also refers to the Treaty with the Six Nations 1794, Treaty of Ghent 1814, and the Great Law of Peace of the Longhouse (Six Nations) People. The precise significance of the latter documents is not clear; however, inasmuch as only one defendant, John Edward Craig, appears to have any blood link to the Six Nation Tribes and he is only ¼ Mohawk.

from the existing line of authority. *Ex Parte Green, supra,* is a case directly in point which presented the question of whether a member of the Six Nations "Iroquois" Confederacy was subject to the Selective Service Act of 1940, a predecessor of the current law. Appellant Green maintained that the tribal sovereignty acknowledged by the United States in several treaties which predated the draft law was preserved intact and he therefore could not be classified a citizen within the meaning of the Selective Service Act. He also contended that the attempt by Congress to confer citizenship upon Indians by the Citizenship Act of 1924, *supra,* and the Nationality Act of 1940, *supra,* were unconstitutional as applied to him because they violated the established treaty rights of the Six Nation Tribes. The Court of Appeals found that even if the claimed treaty status of his Indian tribe were valid, the Nationality Act of 1940 superseded these treaties and the Act "unequivocally made Green a citizen." *Ex Parte Green, supra,* 123 F.2d at 864. The court pointed out that in any conflict between a domestic law and an earlier treaty, the statute must be given precedence. See *Head Money Cases* [Edye v. Robertson], 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884). As Green was a citizen, he fell within the purview of the Selective Service Act.

More recently, the Ninth Circuit has followed the line of reasoning expressed in *Ex Parte Green.* See Williams v. United States, 406 F.2d 704 (9th Cir. 1969), cert. denied 394 U.S. 959, 89 S. Ct. 1307, 22 L.Ed.2d 561 (1969). In *Williams,* the appellant contended that he could not lawfully be drafted because (1) he was a member of the Western Shoshone Nation of Indians and therefore was not a citizen under the Selec-

tive Service Act and (2) he was, in any event, exempt from military service by several treaties between his tribe and the United States. The court summarily rejected William's argument, citing *Ex Parte Green, supra,* and Albany v. United States, *supra.* United States v. Neptune, 337 F.Supp. 1028 (D.Conn.1972), the most recent case which raises these issues, also has followed the teachings of *Ex Parte Green.*

■ The defendants are not unaware of the above cited cases but assert that these cases misconstrue the significance of the Citizenship Act of 1924, *supra,* and the Nationality Act of 1940, *supra.* Defendants point to cases which recognize the so-called "quasi-sovereignty" of Indian tribes with respect to such matters as certain aspects of tribal government and hunting and fishing rights. *See e. g.* Menominee Tribe of Indians v. United States, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz.1968). Defendants then reason that if Indians retain some elements of "quasi-sovereignty", they cannot be citizens under the Selective Service Act. Yet this is precisely the position which *Ex Parte Green* and *Williams* rejected. The court perceives no inconsistency in recognizing certain types of unique Indian rights pertaining to modes of self-government, hunting and fishing rights, etc. and in deeming Indians to be citizens within the meaning of the Selective Service law. Unpersuaded that *Ex Parte Green* and *Williams* were incorrectly decided, the court finds that the defendants are citizens within the meaning of the Selective Service Act and thereby subject to involuntary induction. Defendants' motions to dismiss therefore are denied.