**UNITED STATES of America**

v.

**Thomas Courtney COOK.**

**No. 72–CR–311.**

United States District Court, N. D. New York.

Jan. 25, 1974.

On Motion for Judgment of Acquittal April 5, 1974.

James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., for United States; Brian F. Mumford, Asst. U. S. Atty., Albany, N. Y., of counsel.

Karpatkin, Ohrenstein & Karpatkin, New York City, for defendant; Michael N. Pollet, Steven A. Delibert, New York City, of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Chief Judge.

The facts of this case, insofar as they are pertinent for this decision, begin when defendant registered with the selective service system in May 1966. He was at that time classified IV–D (divinity student) while attending Our Lady of Hope Seminary in Newburgh, New York. In August 1968, he informed his local board of a termination in his seminary study. The board changed his classification to I–A until October 1968 when upon entrance into Richmond College of the City University of the City of New York, defendant received a student deferment (II–S). Initially, his expected year of graduation was June 1970, but due to a change in his major subject of study, he had to extend his graduation date until June 1972 to accumulate the necessary credit for this new program of study. The local board was informed of this development and on July 22, 1970, ended his II–S deferment and reclassified him I–A. On August 24, 1970, an order to report for induction was mailed to defendant but ignored according to the allegations in the instant indictment.

This case, by defendant's motion to dismiss the indictment herein, again presents an issue which has produced judicial disagreement as it concerns the meaning of the phrase "during his academic year" as set forth in the regulation of the selective service system I–S classification, 32 C.F.R. § 1622.15(b) (repealed 1973). In this case, the issue turns on whether August 24, 1970 [the date of defendant's induction order; see Marsano v. Laird, 412 F.2d 65, 68 (2d Cir. 1969); McLain v. Selective Service Local Bd. No. 47, 439 F.2d 737, 742 (8th Cir. 1971)] was within or during his (defendant's) academic year. If it was then defendant was entitled to have his induction order "cancelled" at that time [later regulations mandated "postponement", see United States v. Pickett, 460 F.2d 1255, 1256 n. 6 (8th Cir. 1972)]. The induction order in such a case would have been legally premature and thus would not have supported the instant indictment. United States v. Rundle, 413 F.2d 329, 332 (8th Cir. 1969). On the other hand, if the induction order was issued outside "his academic year" then defendant was entitled to no further delay in his induction and the instant indictment must stand. United States v. Pickett, supra.

There are two leading cases which present the conflicting judicial interpretations regarding the applicability of the definition of "during his academic year" in Section 1622.15(b) when determining a registrant's right to an I–S classification. One school of thought, represented by District Judge Lloyd F. MacMahon, argues for an objective definition of "academic year", meaning for all student registrants who would be eligible, "the 12 month period following the beginning of his course of study." Walsh v. Local Board No. 10, 305 F.Supp. 1274 (S.D. N.Y.1969). Judge MacMahon reasoned that inasmuch as neither the statute nor the regulations contain the slightest suggestion that "academic year" is to be defined differently for an I–S(C) than for a II–S classification, then the express definition of the II–S classification in

Section 1622.25(b) must be applicable for the time period calculation for I–S (C) of Section 1622.15(b). The wording of these sections, although similar, is not identical.

The case of Peller v. Selective Serv. Local Bd. No. 65, 313 F.Supp. 100 (N.D. Ind.1970) presents a substantially different reading of the phrase. District Judge Beamer there also argues persuasively, but for a subjective definition. By emphasizing the word "his" in the statutory phrase, Judge Beamer would relate "academic year" to the educational cycle of the particular registrant, i. e., the time the registrant is actually engaged in the educational process.

Both of these opinions argue and reason well for their respective interpretations of an admittedly ambiguous regulation with an unfortunate omission of the precise meaning of this phrase. I have previously written on this issue, although under facts which did not present the question in as clear and abstract way as the instant case. See *Marowitz v. Selective Serv. Local Bd. No. 12*, Dk. No. 72–CV–467 (N.D.N.Y. April 13, 1973)(unreported). I, therefore, see little need in attempting to improve on the decisions of Judge MacMahon or Judge Beamer on the point, except to give a few reasons for my preference for Judge Beamer's analysis.

I do sympathize with the desire to have a simple and concrete definition for the I–S classification as provided for in the II–S classification [§ 1622.25(b)], but the fact that none has been provided might indicate that the classification, given its purpose, is not amenable to having one. Moreover, it is unusual to construe a regulation by extracting a definition from another regulation without any indication or reference that this was the intent of Congress. As stated in *Marowitz*, my preference for defining "during his academic year" in the relative sense is fundamentally based upon my perception of the intent of Section 1622.15, and as I interpret it, the practical realities surrounding its operation. It seems pointless to me,

in weighing every interest whether it is the public, government or registrant, to pull a student from school while he is actually engaged in expending his educational resources, i. e., studying, paying tuition, and being emotionally geared-up for the educational process. Nowak v. Collins, 437 F.2d 1303, 1307 (3rd Cir. 1971). The government's need for the registrant to enter the military is not so immediate that it cannot wait a short time (usually a matter of a few months—except in the registrant's last academic year) for a student to complete a cycle or sub-cycle of the educational process. The basic notion here is similar to allowing 30 days in the induction order before reporting to duty; it gives a reasonable time to put personal affairs in order and prepare for the impending change in lifestyle. On the other hand, I can see no practical purpose in choosing 12 months in every I–S case. For example, if a registrant, as defendant here, has finished a cycle of his education in June, what benefit accrues either to him or the selective service system in allowing deferment during an educationally inactive summer?

There is necessarily a need for flexibility and an examination of each registrant's case before being able to know when a cycle or sub-cycle terminates. As here, the academic year usually runs from September to June, but it might run from January to January, see e. g., United States v. Wood, 329 F.Supp. 68, 71 (D.N.H.1971), or be based on trimesters instead of semesters. Thus it is not practical, in terms of the purposes of § 1622.15 for "academic year" to be one fixed amount of time, nor can I understand why, if academic year does mean 12 months, Congress simply didn't use the word "year" in § 1622.15(b) which would unambiguously denote 12 months. There are also the words "during" and "his" in the phrasing of § 1622.15 (not found in § 1622.25) which in my judgment must reasonably be given a descriptive function relating, I believe, to the particular registrant.

Nevertheless, while Judge MacMahon's argument has merit and has been followed, see United States v. Rothfelder, 338 F.Supp. 1164, 1167 (W.D.Mich., S.D. 1972), appeal dismissed, 474 F.2d 606 (6th Cir. 1973), cert. den., 413 U.S. 922 (1973), my own perception that the classifications II–S and I–S serve different purposes [United States ex rel. Vacca v. Commanding Officer, etc., 446 F.2d 1079, 1083 n. 5 (2d Cir. 1971)] prevents me from accepting that analysis of the language and purposes of the separate regulations for different classifications and purposes. I choose instead to follow *Peller* and my previous reasoning as it applies to the problem here in *Marowitz*, supra; see also, McLain v. Selective Service Local Bd. No. 47, supra, 439 F.2d at 741–742; Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504, 513 (1969).

Accordingly, I find that defendant's induction order of August 24, 1970, was not issued during "his academic year" and the defendant was not entitled therefore to an I–S(C) deferment. Consequently, the indictment must stand and the defendant's motion to dismiss it is hereby denied.

It is so ordered.

## ON MOTION FOR JUDGMENT OF ACQUITTAL

Defendant is charged with failure to report for and submit to induction on or about September 22, 1970, in violation of the Military Service Act of 1967, 50 U.S.C. Appendix, Section 462. (Indictment 72–CR–311). This case was tried before me, the right to a jury being waived by defendant, yesterday, April 4, 1974.

The trial was quite brief with the government calling only one witness and only the defendant testifying in his own behalf. The government placed defendant's Selective Service File in evidence which showed that an induction order was issued to defendant, who did receive it and indeed proceeded to return it to the board claiming it was

illegally issued for reasons discussed more fully below.

■ Defendant moved for a judgment of acquittal pursuant to Fed.R.Crim.Pro. 29 at the close of the government's proof and also at the close of the trial, and I reserved decision on these motions. This motion is based upon two legal arguments: (1) that defendant was entitled to an I–S classification from his draft board that would have deferred induction and failure to so classify him would invalidate his induction order and the instant indictment; and (2) that defendant is not subject to service under the Military Service Act of 1967 because he is a member of the Six Nations of Indians ("Iroquois Confederacy"), residing in a Canadian reservation and therefore is not a citizen of the United States.

The first point was previously raised upon a motion to dismiss the indictment which was denied by my Memorandum-Decision and Order of January 24, 1974 on the authority of Peller v. Selective Serv. Local Bd. No. 65, 313 F.Supp. 100 (N.D.Ind.1970) and Marowitz v. Selective Serv. Local Bd. No. 12, Dk. No. 72–CV–467 (N.D.N.Y. April 13, 1973) (unreported). The presentation of facts at this trial has not revealed any reason to change this ruling and thus this argument provides in my judgment no new grounds for acquittal at this trial stage.

The second ground for acquittal is similarly without legal merit. In the leading case, Ex parte Green, 123 F.2d 862 (2d Cir. 1941), cert. den. sub nom., Green v. McLaren, 316 U.S. 668, 62 S.Ct. 1035, 86 L.Ed. 1744 (1942), the Court of Appeals, Second Circuit, held that members of the Six Nations of Indians were subject to the Selective Training Act of 1940. This case has been reaffirmed not only by the Second Circuit, United States v. Forness, 125 F.2d 928, 941 n. 38 (2d Cir. 1942); Petition of Moser, 182 F.2d 734 (2d Cir. 1950); but also by virtually every court that has faced a similar question. In Albany v. United States, 152 F.2d 266 (6th Cir. 1945), the defendant was a Canadian citizen, born in Canada, who had registered under the Canadian Military Service Act and was exempted thereunder. The Sixth Circuit Court of Appeals, following Ex parte Green, supra, affirmed the judgment of conviction on his failure to report for induction, citing Ex parte Green. These two cases have been followed by more recent decisions on the Military Selective Service Act of 1967, the basis for the instant indictment. Williams v. United States, 406 F.2d 704 (9th Cir. 1969) (per curiam), cert. den., 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 561 (1969); United States v. Craig, 353 F.Supp. 121, 123 (D.Minn. 1973); United States v. Neptune, 337 F.Supp. 1028 (D.Conn.1972).

Defendant admitted in his testimony at the trial that his father was a citizen of the United States prior to his birth in Hanover, N.H. In light of these facts and the overwhelming precedent, I feel compelled to reach the same conclusion as the Second Circuit in Ex parte Green:

[W]e find ourselves compelled to decide against Green, although, because of the historic relations of the United States to the Indians, we reach that conclusion most reluctantly . . . . We agree that, in the light of the history of the dealings between the United States and Green's tribe, those statutes should be construed most favorably toward him. But we have taxed our ingenuity in vain to find any interpretation which would result in a decision in his favor.

Id., 123 F.2d at 863–864.

Therefore, the defendant's motion for a judgment of acquittal on legal grounds is denied.

■ The only remaining question is whether defendant was proven beyond reasonable doubt to have intentionally and wilfully refused to report for induction. I find the evidence sufficient to so establish his guilt of this charge. Given his correspondence with the local board, especially his letter of September

15, 1970 (Government Exhibit I, Item 63) in which he returned his order to report for induction and requested that the board cancel their order, there is no doubt that he ignored the order with full knowledge of his acts. Defendant admitted sending this letter at the trial. In the letter he returned the induction order and asserted the same basis for refusal to comply, namely, that he is a citizen of the Iroquois Confederacy and not the United States. It is thus beyond reasonable doubt that defendant both knew of his obligation under 50 U.S.C. Appendix, Section 462, and chose to ignore it. The requisite criminal intent is clearly present and is proven beyond a reasonable doubt. I, therefore, find defendant guilty as charged.

My findings of fact are contained herein [Fed.R.Crim.Pro. 23(c)]. I hereby direct a presentence investigation be made. The attorneys for the defendant should contact Chief Probation Officer Frank T. Waterson, Federal Post Office Building, Albany, New York, to arrange for the interview of defendant. The defendant has impressed me with the sincerity of his beliefs by his appearance and testimony and his release upon his own recognizance shall continue until notified to appear for sentencing by the United States Attorney's Office.

It should be noted that it was brought to my attention subsequent to the trial that defendant's 26th birthday is April 7, 1974, just two days from the date of this decision. After consultation with both the Assistant United States Attorney Brian F. Mumford, and the attorney for defendant, it was agreed that the 10 days previously allowed by me to brief the legal questions on the motion for a judgment of acquittal should be dispensed with in order to be able to consider defendant for treatment as a Young Adult Offender (18 U.S.C. § 4209) under the Federal Youth Corrections Act (18 U.S.C. §§ 5005–5024). Under these statutes a "conviction", or a "judgment on a verdict or finding of guilty" [18 U.S.C. § 5006(h)] must be rendered prior to a defendant's 26th birthday.

18 U.S.C. § 4209; see United States v. Kleinzahler, 306 F.Supp. 311, 313 (E.D. N.Y.1969); also, Youth Corrections Act, 11 A.L.R.Fed. 499, 544. Thus it is necessary to expedite and issue this decision prior to April 7, 1974, so as not to lose the availability of this optional sentencing procedure.

The defendant is found guilty as charged in the indictment. Sentencing shall occur on a date noticed by the United States Attorney's office.

It is so ordered.